FRUGÉ, Judge.
This is a tort action whereby plaintiff alleges that he was injured while working •on an oil drilling rig by an employee of the ■defendant, LofHand Brothers Company. An intervention was filed by Hartford Accident and Indemnity Company, as workmen’s compensation insurer of plaintiff’s •employer, Frank’s Casing Crew and Rental Tools, Inc., for compensation benefits paid to plaintiff. Defendant’s answer denies actionable negligence and alternatively pleads the affirmative defenses of assumption of risk and contributory negligence. After trial on the merits, the lower court, with written reasons, rendered judgment in favor •of defendant, dismissing plaintiff’s suit and the intervenor’s claim. From this judgment, both the plaintiff and the intervenor liave appealed.
The record discloses that the California ■Company, in the process of drilling an oil well in the Parish of Acadia, Louisiana, •contracted with LofHand Brothers Com-' ■pany, a drilling contractor, to drill the oil ■well on which plaintiff was injured. The ■California Company also contracted with Frank’s Casing Crew, for whom plaintiff worked, to perform casing operations on the well. It was in this capacity and while plaintiff was on this particular job that lie was injured.
On the day of the accident Frank’s Casing ■Crew arrived on the job several hours prior to the actual beginning of the casing operations, and engaged in work preparatory to the running of the casing. They also rigged up their mud lines, which are necessary to pump mud from the mud pits located on ithe rig into the casing as each joint of casing is run into the well. Plaintiff was the “mud man” on the casing crew.
According to the expert testimony, in the normal or routine situation where mud casing operations are necessary, the mud is sucked into the mud hose which in turn deposits the mud in the casing by means of a mud mixing C-250 pump. This pump, depending on the liner used has a pressure rating of 800 to 2,500 pounds. The valve at the end of the mud hose is normally owned and provided by the casing crew. It is operated by the “mud man”. The pump is pre-set and runs continuously. When the mud man desires to shut off his valve there is no danger of his valve exploding because the mud circulates back into the pit where it originated through ancillary mud lines called “guns”. These “guns” are escape routes for the circulating mud when the valve in the nozzle of the mud hose is cut off.
On the day of accident a different mud pumping operation was utilized. It appears that sometime before Frank’s Casing Crew was ready to begin operations the California Company’s chief engineer ordered the jetting out of a fresh water pit. This was to be accomplished simultaneously with the mud casing operation and involved the use of a different set-up from that previously described herein. Instead of having the ancillary mud lines open to alleviate the danger of a buildup of pressure in the pumping system, these lines were closed. Additionally, instead of using a C-250 mud'mixing pump, a much larger pump was used, the D-100.
It is undisputed by all of the parties to this suit that the casing operations with the ancillary lines closed presented a dangerous situation. If a mistake was made either by the plaintiff in closing the valve or nozzle while the pump was running or by the driller in starting the pump when the valve was closed the nozzle valve was sure to explode. It is likewise undisputed that the persons connected with this operation, in- *110 eluding plaintiff, had full knowledge of the dangerous situation it presented.
Before commencing operations plaintiff and the driller, Soileau, agreed that when the plaintiff was to close his valve he was to signal to the driller, Soileau, that the driller could turn off his pump; this signal was to be given either orally or by hand.
It was under this arrangement that the casing operations commenced. About two hours later the valve which plaintiff was operating exploded, causing the injuries sued upon herein.
The predicates of liability against the defendants are: First, that they used a heavy duty drilling pump to pump the drilling mud into the casing instead of C-250 mud mixing pump. Second, that they shut off the safety factor, namely, the ancillary relief lines, thereby creating an inherently dangerous situation. Third, that the Loff-land Driller, Soileau, turned-on the pump when the valve being operated by Plaintiff Covington was closed, causing the explosion.
Defendants, in answer to plaintiff’s contentions, submit that what made the situation dangerous is not having the ancillary lines open, was the possibility that the driller or the plaintiff would make a mistake; that without the element of human error this situation was not dangerous. Furthermore, they urge that plaintiff closed his valve while the pump was running and thereby caused his own injury. By way of alternative defense they submit that since plaintiff .had full knowledge of the operation and the dangers attached thereto, he assumed the risk of the resulting injury.
The first issue presented is whether the mode of operation used in pumping mud into the casing was negligence on the part of Loffland Brothers.
In 65 C.J.S. Negligence § 1, p. 313, it. is stated:
“It has been held that negligence does , not exist unless there is a reasonable - likelihood of danger as a consequence of the act complained of, and it must be measured in the light of some danger that is reasonably to be anticipated. The duty to use care is based on the knowledge of danger, and negligence or want of ordinary care includes reasonable anticipation of harm. So negligence has been defined as conduct which creates an undue risk of harm or injury to others; the failure to use such care as is necessary to avoid a danger which should ■ and could have been anticipated, by reason of which plaintiff has suffered injury.”
This definition of negligence was quoted approvingly in a recent decision of this court, Larned v. Wallace, La.App., 146 So. 2d 434, 437.
In the case of Brown v. Liberty Mutual Ins. Co., 234 La. 860, 101 So.2d 696, our Supreme Court announced:
“Liability for damages under Article 2315 of the Civil Code is founded upon fault and whether or not fault exists depends upon the facts and circumstances presented in each particular case. In determining fault, a common-sense test is to be applied — that is — how would a reasonably prudent-man have acted or what precautions would he have taken if faced with similar conditions and circumstances?' The degree of care to be exercised must always be commensurate with the foreseeable dangers confronting the alleged wrongdoer.”
In order to determine whether Loffland' was guilty of negligence in failing to utilize-the ancillary mud lines, we must first determine the legal relationship existing between-, them quoad the incident in question for-the nature of this relationship governs the degree of care owed by Loffland to plaintiff.
Counsel for.plaintiff takes the position that' LofHand’s choice of an unsafe procedure rather than a safe procedure in. *111 pumping the mud was negligence in itself. This argument is obviously based on a master-servant relationship and the corresponding duty of an employer to furnish reasonably safe working conditions for his employees. A cursory examination of the facts convinces us that no such relationship exists in the case at bar. Plaintiff is an employee of Frank’s Casing Crew. Thus, any duty to furnish plaintiff with safe working conditions was owed by Frank’s Casing Crew and not Loffland. This is not to say that the employees of Loffland were under no duty to use care in the mud pumping operation. Furthermore, since the employees of Loffland had full knowledge of the dangers inherent in the pumping operation, the duty to use care in operating the mud pump was greater than it would have been had the ancillary mud lines been open.
Concerning the inherent dangers of the pumping operation, we are urged by counsel for defendant that plaintiff was aware of these dangers and therefore assumed the risk of the injury thereby.
It is true that one who encounters a dangerous situation voluntarily and with full knowledge of the risks attached thereto, may not recover for injuries which are caused thereby. 65 C.J.S. Negligence § 174. Spears v. American Fidelity and Casualty Company, La.App., 123 So.2d 513; Allen v. Firemen’s Fund Insurance Company, La. App., 132 So.2d 662. However, in our opinion, although plaintiff engaged in the pumping operation knowing that the ancillary mud lines were not being utilized, he had the right to assume that Loffland’s employee, who operated the pump, would likewise appreciate the danger of the situation and act with commensurate caution in starting the pump. Certainly it cannot be said that plaintiff assumed the risk that Loff-land’s Employee might negligently start the pump while the nozzle was closed. Indeed it would be most unrealistic to set forth a rule of law whereby one assumes the risk of injury by anticipating future negligent conduct on the part of another.
Therefore, the question to be decided by this court is whether Soileau, who was operating the pump, negligently started the pump while the valve on the nozzle was closed.
The trial judge, who is in a better position to judge the credibility of witnesses, found that plaintiff had failed to prove that the pump operator had started the mud pump when the valve was closed. Accordingly, he held that plaintiff had failed to prove his case with the legal certainty required by law. Considering the evidence as a whole, we cannot say that he committed manifest error in his findings. See Peart v. Slocum, La.App. 3 Cir., 142 So.2d 421, and cases cited therein. We are mindful of the expert testimony adduced at the trial of this case to the effect that plaintiff was in the best position to determine whether the pump was running by observing the flow of the mud from the nozzle of the valve. These experts also testified that if plaintiff attempted to close the nozzle while the pump was running, he would have some difficulty in turning the valve and know from the vibration of the nozzle that the pump was running. However, it was additionally established that the nozzle could be closed by a valve which required only a half turn, requiring only an instant to operate. It would serve no purpose to review in great detail all of the testimony contained in the record of this case. It suffices to say that neither party to this suit produced any witness who could testify unequivocally as to how the accident occurred. Under these circumstances, we cannot but agree with the trial judge that plaintiff failed to prove actionable negligence on the part of the defendant, Loff-land.
For the reasons assigned, the judgment of the lower court is affirmed, dismissing plaintiff’s suit; plaintiff to pay all costs of this appeal.
Affirmed.