FRUGÉ, Judge.
This action arose out of a rear-end collision whereby a 1965 Ford, driven by defendant, Melvin Arthur Steely and insured by Ranger County Mutual Insurance Company, collided with a workbus driven by defendant, Clifton Auzenne, owned by defendant, Clarence Batiste, and insured by Canal Insurance Company and Insured Lloyds.[1]
Plaintiff in the first action is Wallace M. Dahlquist, who was a passenger in the Steely automobile.
In a separate action Insured Lloyds, the collision insurer of the bus, and Clarence Batiste, the owner of the bus, petitioned to recover for the damages to the bus resulting from the accident, in the total sum of $681.29.[2] This latter case, Insured *248 Lloyds v. Ranger County Mutual Insurance Company, 212 So.2d 255 (La.App.3d Cir. 1968), No. 2308 on our docket, was consolidated with the first case for trial purposes.
Defendant Steely and his insurer denied any negligence on his part and claimed that the driver of the bus, Clifton Auzenne, was negligent. In an amended answer, Steely and his insurer alleged that plaintiff (a guest passenger) had assumed the risk of Steely’s negligence or was contributorily negligent and therefore barred from recovering. The bus owner, driver, and insurer all denied any negligence on the part of the bus driver and claimed that the sole cause of the accident was the gross negligence of the automobile driver, Steely. In the alternative they urged that plaintiff be found contributorily negligent, or to have assumed the risk of Steely’s negligence by agreeing to ride with him.
The accident which brought about this litigation occurred on U. S. Highway 190 around 5:30 a. m. on October 28, 1965, when plaintiff, Dahlquist, defendant, Steely, and two other passengers, were en route to Beaumont, Texas, following a night of “messing around” in the Ville Platte-Eunice area.
On the preceding evening Dahlquist, Steely, and the other two convened after work at a tavern in Beaumont, Texas, shortly after 5:0O p. m. and had a few beers. The group then decided to drive to Louisiana and make some stops there. This was around 7:00 p. m. They crossed into Louisiana and ate sandwiches for supper. From there they drove non-stop to Eunice or Ville Platte, arriving there probably after 10:00 p. m. The party visited three or four bars and drank until about 2 o’clock in the morning, at which time Steely and another ate breakfast and began the return trip to Texas.
On the return trip, they had a flat, which Steely and Stevens fixed. Thereafter, Steely became “lost” in the Mamou-Ville Platte area, and, as he stated, he drove around for almost two hours before reaching Mamou, where he obtained directions. Steely then proceeded west toward Texas on U. S. Highway 190 to a point east of the town of Elton, where he collided with the left rear of the parked workbus at 5:30 a. m.
The speed limit at the point of the collision was 60 miles per hour. Steely admitted traveling at 65 or 70 miles per hour at the time of impact. He further said that he was having some difficulty with his lights going out on his 1965 Ford and that just before the collision, he was blinking his lights in order to get them to come back on. Steely stated in his deposition — he did not appear at the trial — that the bus he hit was situated partially on and partially off the highway and that he did not see it until immediately before impact. He further said that he had encountered some fog in that area.
The trial court found that all the lights on the bus were working and that they were all on at the time of the impact. He then concluded that the sole proximate cause of the accident was the negligence of defendant, Steely, in failing to observe the well lighted bus and to have avoided it. The trial court rendered judgment in favor of plaintiff, Dahlquist, (who, because of extensive head injuries, remembers nothing of the events of that night) and against Ranger County Mutual Insurance Company and Melvin Arthur Steely, in the sum of $31,464.00 — $10,000.00 against the insurer and the remaining $21,464.00 against Steely alone. The trial court denied plaintiff recovery against Canal Insurance Company, Clarence Batiste, and Clifton Auzenne, the insurer, owner, and driver of the workbus, respectively.
In the other suit, consolidated for trial with this one, the trial court rendered judgment in favor of Clarence Batiste and Insured Lloyds (owner and collision insurer of the bus) and against Melvin Arthur Steely and Ranger County Mutual Insurance Company, for the damages to the bus as a result of the collision.
*249 Plaintiff appealed from the judgment dismissing his demands against the driver, owner and insurer of the bus. The defendant, Steely, has appealed from the trial judge’s ruling that plaintiff had not assumed the risk and was not contributorily negligent, thereby permitting plaintiff’s recovery. Defendant Steely and his insurer also appealed from the judgment in the case consolidated herewith which subjected them to payment of the damage done to the bus.
The first issue on these appeals is whether or not plaintiff, Dahlquist, who was a sleeping guest passenger in the Steely vehicle, is barred from recovering for his personal injuries because he assumed the risk or was contributorily negligent. The line which delineates between “contributory negligence” and “assumption of risk” is a vague and obscure one.
Contributory negligence (insofar as a guest passenger is concerned) exists when the guest has subjected himself to an unreasonable risk of injury, and recovery is barred him when that particular risk ripens into injury to him.
Assumption of risk has been said to constitute a defense (where the driver would otherwise be liable) because the guest has made an “informed choice” to relieve the driver of the usual standard of care owed to a guest. The driver then owes no duty to his guest; and when injury occurs to the guest as a result of the imprudence of the driver, the driver does not become liable therefor if that injury was caused by a risk against which the guest chose to relieve the driver from his usual duty to protect the guest. Therefore the driver has done no actionable wrong to his guest because the guest has somehow consented to the driver’s conduct.[3]
In the present case it is argued that Dahlquist was contributorily negligent because he chose to ride with Steely when he knew or should have known that Steely’s faculties were or would become materially impaired from drinking. The same argument is made that Dahlquist assumed the risk of Steely’s negligence.[4] But the burden of proving by a preponderance of the evidence that Dahlquist assumed any risk (or that he was contributorily negligent), that Steely’s faculties were materially impaired at the time of the accident, and that this impairment of his faculties was a cause of the accident, rests upon defendants-appellants.
We find it unnecessary to determine if Dahlquist was contributorily negligent or if he assumed any risk because any negligence or assumption of risk on his part extended only the risk that Steely’s faculties were materially impaired from drinking; for we hold that defendants-appellants have *250 failed to prove by a preponderance of the evidence that Steely’s faculties were materially impaired at the time of the accident as a result of his drinking.
None of the parties in the Steely automobile had had anything to drink for at least three hours before the time of the accident. Steely had eaten a big breakfast before beginning the return trip; he had fixed a flat on his car; he probably even took a short nap immediately before driving into the bus.
The investigating state trooper found Steely coordinated and cooperative, and his speech coherent. Although he detected an odor of alcohol upon Steely’s breath, he did not believe that Steely was intoxicated at the time. Dr. Landreneau, a general surgeon who rendered emergency treatment to both Steely and Dahlquist, examined Steely almost two hours after the accident. He detected a faint odor of alcohol on Steely’s breath, but found Steely quite cooperative, fully coordinated and without any slurred or incoherent speech. He was of the definite opinion that Steely was not intoxicated, and furthermore, that the drinks Steely might have had earlier would not significantly effect his ability to operate his vehicle as a careful driver.
It appears that Steely tended to drive rather fast (whether drinking or not) but the passenger, Stevens, never saw him drive negligently or recklessly, never saw him lose control of the vehicle, veer off the road, or do anything that would indicate that Steely was anything but a prudent driver at all times.
The only evidence in the record favorable to appellant on this point is the circumstance that Steely and the others had been drinking after work in Beaumont and at various bars around Ville Platte roughly between the hours of 10:00 p. m. and 2:00 a. m. We find this evidence insufficient to reverse the trial judge on this factual issue in view of all the contrary evidence discussed above.
The cases[5] relied upon by defendants-appellants are inapplicable here because in each of those cases there was not only considerable evidence that the driver’s faculties were materially impaired, but also evidence that the driver was “intoxicated” at the time of the accident. The proof in the instant case falls far short of that in the cited cases.
Furthermore, the evidence appears somewhat deficient in showing that Steely’s drinking caused him to fail to timely observe the parked bus.[6] It is at least equally probable that Steely ran into the rear of the parked bus as a result of the accumulation of factors such as: the possible existence of a broken ground fog in the area of the accident, Steely’s tired and perhaps sleepy condition, and the likelihood that Steely was not paying attention to his road at the particular instant preceding the accident.
The next issue is the determination of whether or not the workbus was partially on the traveled portion of the highway at the time of the collision. The trial judge noted that physical evidence at the scene of the accident virtually prescribes a finding that the accident occurred on the traveled portion of the highway, and, therefore, the rear of the workbus must have obstructed the highway somewhat. There is also, however, the testimony of the driver of the bus and four passengers, who all claim that the bus was completely off the highway both before and after the impact.
In view of this conflicting evidence, the trial judge did not directly pass upon the *251 position of the bus, but instead concluded that if the rear of the bus did extend onto the highway, the driver’s negligence in this regard was not the “proximate cause” of the accident.
In order to determine the question of liability of the driver, owner, and insurer of the workbus, we believe it is crucial to decide whether or not that bus was parked partially on the traveled portion of Highway 190.
Sergeant Bertrand, who investigated the accident, found the Steely vehicle had stopped on the highway within a few feet of the point where he believed the collision occurred. He fixed the point of impact at about one foot inside the traveled portion of the highway, because of three fresh gouge marks he found in close proximation of each other, roughly one to three feet from the north, or righthand shoulder of the highway. Furthermore, he found all the debris to be in the right hand lane of the highway. The shoulder at that point was shell which was rather freshly laid. Sergeant Bertrand found no disturbance of the shell which might indicate that the car had driven onto the shoulder or that the accident had occurred there. Nor was there any shell on the highway itself. From this he concluded that the rear of the bus must have extended approximately three feet into the traveled portion of the highway.
When he arrived at the scene, Sergeant Bertrand found the bus at least twenty feet from the front of the car parked wholly on the shoulder of the road (around 30 feet from where he judged to be the point of impact). He thus concluded that the bus must have been moved either by the impact or by someone after the accident. This conclusion is in line with the testimony of the passengers and the driver of the bus in one respect, although all of them either denied that the bus was moved, or denied seeing the bus moved after the impact, and all of them stated that the bus moved only one to three feet as a result of the impact.
Without separately discussing the testimony of each of the occupants of the bus, we shall only remark that we have given close consideration to their testimony and we have noted certain conflicts and inconsistencies which discount the weight that we attribute to their testimony. We therefore conclude that the bus must have moved for a distance of approximately thirty feet, either as a result of the accident, or by someone after the accident. Furthermore, the physical facts, as noted by Sergeant Bertrand strongly indicate that the actual impact must have occurred on the traveled portion of the highway, and further, that the Steely vehicle did not go off the highway onto the shoulder thereof immediately before the accident. Thus, it follows that the rear of the work bus must have extended two or three feet into the traveled portion of the highway at the moment of the impact.[7]
It is noted that there was a sufficiently wide shoulder near the place where the work bus stopped, for the driver thereof to have driven the bus entirely off the highway. His failure to do so must be deemed as negligence in view of R.S. 32:141.
Since Steely did not veer his vehicle off the highway and strike the bus ón the shoulder, we conclude that the bus *252 driver’s negligence in failing to remove the rear of the bus completely from the traveled portion of the highway was a cause in fact of the accident and a substantial factor causing the injury to plaintiff.
In the suit consolidated herewith for trial, the owner of the bus, Clarence Batiste, and the insurer of the bus, Insured Lloyds, recovered against Steely for damages to the bus. We are of the opinion that this judgment was correct.
The bus was well-lighted and Steely could have easily seen it in ample time to avoid striking it. There was plenty of roadway on which he could have passed, for the bus obstructed only a small portion of his travel lane; and there was no oncoming traffic to interfere with his vision or maneuver. Therefore, although the bus driver and Steely were negligent in causing the accident, under the doctrine of last clear chance Steely is liable for the damages to the bus, because had he been attentive and employed due care, he would have seen the well-lighted rear of the bus extending partially into his lane in ample time to have stopped or avoided striking it.[8]
For the foregoing reasons the judgment of the trial court is amended so as to provide judgment in favor of plaintiff, Dahlquist, and against defendants, Clarence Batiste, Clifton Auzenne, and Canal Insurance Company, jointly, severally, and in solido with Melvin Arthur Steely and Ranger County Mutual Insurance Company. Both Ranger County Mutual Insurance Company and Canal Insurance Company are bound by the limits of their policies of insurance to pay $10,000.00 each and the balance of $11,464.00 is owed by the other aforenamed defendants jointly, severally, and in solido. As amended the judgment of the trial court is affirmed. Costs of these proceedings shall be taxed against all the above-mentioned defendants.
Amended and affirmed.

. Canal Insurance is the liability insurer of the GMC bus, whereas the Insured Lloyds is the collision insurer.

. Insured Lloyds’ policy was $250.00 deductible which required that the owner, Clarence Batiste, pay the first $250.00 toward the repairs to the bus and that the remainder ($431.29) would be paid by Insured Lloyds.

. See Prosser, Torts, § 67 (3d ed., 1964); 2 Harper & James, Law of Torts, § 21 (1956). It appears that most legal writers criticize the “doctrine” of assumption of risk, at least insofar as the manner in which courts have applied it. Prosser, Supra; Harper & James, Supra, § 21.8. See generally Symposium: Assumption of Risk, 22 La.L.Rev. pp. 1-166 (1961).

. These determinations invite associated problems such as:
When would a reasonable man realize that Steely’s faculties had (or would probably) become “materially impaired” if Steely was sober when the party left Beaumont?
After arriving in the Ville Platte area did Dahlquist truly have any reasonable alternative other than to remain with Steely and depend upon him to get Dahlquist home?
What effect does the fact that Dahl-quist was asleep for at least three hours before the accident — apparently indicating that he desired to call it a night — have upon his ability to assume the risk of Steely’s negligence?
Could Dahlquist assume a risk of Steely’s actions at 5:30 a. m. when the party had no specific venture in mind when it left Beaumont and when they had not intended to stay out until such a late hour? That is, can one assume the risk of a vague, unknown, and future circumstance?

. Roller v. Cormier, 192 So.2d 568 (La. App.3d Cir., 1966); Daigle v. United States Fidelity and Guaranty Company, 187 So.2d 214 (La.App.3d Cir., 1966); Viator v. Grain Dealers Mutual Insurance Company, 182 So.2d 165 (La.App. 3d Cir., 1966); McAllister v. Travelers Insurance Company, 121 So.2d 283 (La. App.1st Cir., 1960).

. See Moses v. Commercial Standard Insurance Company, 174 So.2d 682 (La. App.3d Cir., 1965); Covington v. Loffland Brothers Company, etc., 152 So.2d 108 (La.App.3d Cir., 1963).

. This view is strengthened by the existence of several mail boxes on that right shoulder at the point where the bus was allegedly parked, which mailboxes are about nine feet from the edge of the pavement. The workbus is eight feet in width. There is testimony that after the impact, the workbus was positioned far enough from the mailboxes that a good-sized man could walk between the bus and the mailboxes. This, coupled with the realistic likelihood that the workbus was not positioned exactly parallel to the roadway when it stopped adjacent to the mailboxes, seems to strengthen the view that the rear of the workbus was extended somewhat into the traveled portion of the highway, at least before the impact.

. The doctrine of last clear chance cannot apply to preclude an innocent guest passenger from recovering, and therefore, though it applies as between Steely and the driver of the bus, its application does not affect the rights of Dahlquist in the other consolidated case.