### GEDDES & MOSS UNDERTAKING & EMBALMING CO., Limited, v. FIRST NAT. LIFE INS. CO.

#### No. 16282.

Court of Appeal of Louisiana. Orleans.

May 4, 1936.

882

Normann & McMahon & Harold M. Rouchell, of New Orleans, for appellant.

John T. Charbonnet, of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit for $105, the face value of a policy of industrial life insurance issued by the defendant insurance company to Elisha Henry, deceased, and brought by the assignee of his beneficiary. The defendant admits the issuance of the policy, the payment of the premiums, the receipt of proofs of loss, etc., and defends the suit upon the ground that the death of the insured resulted from a violation of law, a risk expressly excepted from the coverage of the policy.

There was judgment below in favor of plaintiff as prayed for, and defendant has appealed.

The policy contains the following provision: "Disability or funeral benefits will not be paid * * * at any time for disability or death resulting from violation of law. * * *"

Elisha Henry died as the result of a collision between an automobile driven by him and another car driven by one Couvillon. Defendant claims that the accident was due to Henry's being intoxicated at the time.

Section 3, rule 2 (a) of Act No. 21 of 1932 reads as follows: "It shall be unlawful and punishable as provided in Section Thirteen (13) of this Act, for any person, whether licensed or not, who is an habitual user of narcotic drugs or any person who is under the influence of intoxicating liquor or narcotic drugs, to drive any vehicle upon any public road, highway or bridge of this State."

Plaintiff denies the charge of intoxication and contends that the accident which resulted in Henry's death was due to the recklessness of the driver of the automobile with which his car collided, and, in the alternative, that even if Henry was drunk, and thus guilty of a violation of the statute referred to, his criminal conduct had nothing to do with the accident.

The evidence on the subject of Henry's condition consists of the testimony of Dr. Richard Wallace Young, an interne of Charity Hospital to which institution Henry was conveyed after the accident, Estine Couvillon, the driver of the colliding automobile, and officers John Ponsaa and Thomas Gaule of the traffic squad of the New Orleans police, who arrived at the scene of the accident shortly after the collision and caused Henry to be charged under the statute with driving his automobile while under the influence of liquor.

Dr. Young stated that Henry told him, in reply to an inquiry as to the cause of the accident, that he had collided with another car, but could not remember the details because he was drunk; that Henry acted like a drunken man, and that force was required to compel him to submit to treatment.

Couvillon ventured no opinion concerning Henry's condition, but testified that Henry drove his car across the intersection at a speed of 20 or 25 miles an hour without stopping and without having any lights burning. He also testified that "there was a broken bottle on the banquette, I seen, and I went into the car (insured's) and there was another bottle, but there was nothing in the bottle."

Officers Gaule and Ponsaa testified that they smelled liquor on Henry's breath and considered him under its influence.

As opposed to this evidence, four witnesses, Henry's wife, Inez, two of her friends, Isabell Alfred and Cornelius Gunezles, and Moses Fox, who was a passenger in Henry's car, testified in favor of Henry's alleged sobriety. The three women merely stated that they had seen Henry during the day of the accident and had not seen him take a drink and that he was not a "drinking man."

Moses Fox testified that he had been with him for quite some time before the accident, and that Henry had only had one drink of "cherry wine," whatever that is, before the accident.

We have no difficulty in reaching the conclusion that Henry was drunk at the time he was injured. It is said, however, that drunk or sober, the accident was due to the negligence of the driver of the colliding vehicle.

The only evidence on the question of the fault of the drivers of the automobiles involved is that of Couvillon, who testified, as we have said, that Henry failed to stop at the intersection where the accident occurred and drove his car without headlights at a speed of 20 or 25 miles per hour, and Moses Fox, Henry's companion. Fox testified that Couvillon's lights were not burning, and that Henry stopped at the intersection and was without fault in connection with the collision. But Fox is the witness who testified that Henry had only had one drink of "cherry wine" before the accident, and, since we have found that Henry was drunk when the accident occurred, we place no confidence in his evidence.

Under ordinary conditions, where two automobiles collide, one of which is operated by a sober man and the other by a drunken man, we should unhesitatingly impute the fault to the drunken driver, and we find no reliable testimony in this record to indicate that the circumstances surrounding the accident were extraordinary. As was well said in Flannagan v. Provident Life & Accident Insurance Co. (C.C.A.Va.) 22 F.(2d) 136, 138:

"Courts must necessarily recognize modern conditions. The great changes that have taken place in recent years in the method of travel, the largely increased use of motor vehicles, the great improvement in highways, and the resulting great increase in danger, not only to themselves, but to others who travel the highways, through persons driving motor vehicles while not in possession of their normal faculties, or while intoxicated to any perceptible degree, have made it necessary to penalize intoxication under these conditions. This situation has necessarily been recognized in all branches of commerce, and insurance companies, as a matter of necessary protection to themselves, and as a matter of justice to others insuring with them, have been compelled to insert clauses in their policies similar to those in this case.

"From the evidence in this case no materially different inferences may be reasonably drawn. The deceased was running an automobile while intoxicated, within the meaning of the Virginia statute, above cited, and in so doing was violating the Virginia law. This being true, under the

conditions of the policies sued on, there was no resultant liability for his death."

It is not essential that we should find that Henry's violation of law was the sole cause of his death to preclude recovery under the clause in the policy relied upon by defendant. It is sufficient that his misconduct was a causative factor. Couch on Insurance, vol. 6, § 1236, p. 4512.

Our conclusion is that the defense relied upon has been established, and that plaintiff's claim should be dismissed.

For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that there be judgment herein in favor of defendant, First National Life Insurance Company, dismissing plaintiff's suit at its cost.

Reversed.

JANVIER, J., takes no part.