CULPEPPER, Judge.
This is a suit for damages for personal ■.injuries received by plaintiff while a guest passenger in an automobile driven by Mr. Simmie Carroll and insured by the defendant. From an adverse judgment plaintiff appeals.
The essential issue concerns the defense that plaintiff was guilty of contributory negligence by riding with a driver whom she knew, or should have known, was intoxicated.
The record shows that on the Saturday night in question, August 24, 1963, Mr. Sim-mie Carroll, the driver, drank intoxicating beverages almost continuously from 6:00 p. m. until about 2:30 a. m. the next morning, at which time the accident occurred. He started drinking at a “fox hunt”. A group of men went to a hunting club in the woods and turned their hounds loose for a conditioning run. The men remained at the camp and enjoyed a social gathering of cards, drinks, supper, and listening to the hounds. Carroll went out early, about 6:00 p. m., with another member of the party to help prepare the food; he admits that he probably had a can of beer on the way to the camp. While at the camp he drank 3 or 4 beers. The “fox hunt” broke up after supper, about 10:30 p. m.
Carroll then went to Lecompte and picked up the plaintiff, Mrs. Daigle, to take her out to supper, dancing, etc. It apparently was not a prearranged date, but they had gone out together many times before. They went to a restaurant and lounge near Che-neyville, where a group of friends often gathered on Saturday night for dancing, drinking and supper. While there they drank bourbon whiskey. Carroll admits having “2, 3 or 4 drinks” during the approximately 1 hour they were at the lounge. Mrs. Daigle says she had about 2 drinks and she thought Carroll had about the same.
When the lounge closed, about 12 o’clock p. m., one of the couples invited the whole group to go see their new house. At this home, the members of the party continued to drink, dance and have a good time. Carroll says he had a “drink or two” of bourbon *216 there. Mrs. Daigle says they each had about 2 drinks.
They left this last party about 2:30 a. m. Mrs. Daigle immediately went to sleep in the car. They had driven only about 2 miles when the accident occurred on Louisiana Highway #167. At the scene the highway is straight, level, blacktopped and contains two lanes. The vehicle gradually veered off the pavement, into the ditch and struck a tree. Mrs. Daigle was thrown forward and received head and chest injuries. There is no explanation for the accident except that Carroll either went to sleep or lost control of the car due to intoxication. It is clear that Carroll was negligent.
Carroll got out of the car and flagged down Mr. Charles Johnson, a friend who lived in the area. They took Mrs. Daigle, in Johnson’s car, to the clinic of Drs. Hair and Carolton in Lecompte. Both men carried her by the arms to the door of the clinic and there Mr. Johnson lifted Mrs. Daigle in his arms and carried her on into the emergency room. Dr. Hair testified positively and unequivocally that Mrs. Daigle was intoxicated. He based this opinion on his observation of the way she talked, cried, smelled strongly of alcohol and on the fact that they had to lift her on the table. Dr. Hair was also of the opinion that Carroll was “intoxicated”, based on the way he talked, acted and smelled strongly of alcohol.
Mrs. Janette Cox, a nurse at Dr. Hair’s clinic, also testified that Mrs. Daigle was “drunk”. But apparently this nurse did not observe Mr. Carroll.
After Mrs. Daigle’s facial lacerationS| were sutured, she was taken to St. Francis Cabrini Hospital in Alexandria for further examination and treatment. Mrs. Edith'. Rabalais, a nurse there, was of the opinion that Mrs. Daigle was intoxicated, based on her “thick tongue”, her bloodshot eyes and her smell of alcohol.
Mr. Charles Johnson, who was first on the scene of the accident and drove plaintiff and Carroll to Dr. Hair’s clinic, was of the opinion that Carroll “had had a few drinks but he wasn’t drunk.”
Mr. Jack Mott, who is plaintiff’s brother-in-law and was a member of the party at the lounge and the new home, testified Carroll “had a few drinks” and he “was not sober and not drunk.”
With this summary of the evidence-in mind, let us examine the law. In Stalsby v. Powell, La.App., 146 So.2d 279 (3rd Cir.1962) this court said:
“The jurisprudence of this State has been established to the effect that a guest passenger cannot recover for injuries received as a result of his host driver’s negligence where the driver has had a sufficient quantity of intoxicants to make him lose control of his mental and physical faculties or to cause such faculties to be materially impaired, and where the guest passenger knew or should have known of the driver’s condition and yet voluntarily rode with him. Richard v. Canning, La. App.Orl., 158 So. 598; Elba v. Thomas, La.App.Orl., 59 So.2d 732; Cormier v. Angelle, La.App. 1 Cir., 119 So.2d 876; McAllister v. Travelers Insurance Co., [La.App., 121 So.2d 283,] supra; Dowden v. Bankers Fire & Marine Insurance Company, La.App. 2 Cir., 124 So.2d 254; Otis v. New Orleans Public Service, Inc., La.App. 4 Cir., 127 So.2d 197.”
In the more recent case of Jones v. Continental Casualty Company of Chicago, Ill., 246 La. 921, 169 So.2d 50 (1964) our Supreme Court approved prior jurisprudence to the effect that it is not necessary to show that the driver was drunk. The fact that he had a sufficient quantity of intoxicants to make him lose normal control of his mental and physical faculties and cause such faculties to be materially impaired is sufficient.
In Hargett v. Chemical Service, Inc., 116 So.2d 855 (1 Cir.1959) it is stated that the essential elements of the defense are: (1) *217 That the driver was in fact intoxicated. (2) That the plaintiff knew or should have known the driver was intoxicated. (3) That the intoxication of the driver caused or contributed to the accident.
Applying these statements of the law to the present case, it is clear that Car-Toll was intoxicated. He admits having between 8 and 10 drinks during the course of the evening. Even plaintiffs own witnesses said Carroll appeared to have had a few drinks; that he was not sober and he was not drunk. This must be interpreted to mean that he did not have normal control of his mental and physical faculties. Dr. Hair, on whom the trial judge relied heavily, testified unequivocally that Carroll was intoxicated. The evidence clearly supports this finding of fact by the trial judge.
The district judge stated he could not '“fairly reach the conclusion that Mrs. Daigle ■was intoxicated” because the “rather severe 'blow” to her head could have caused or contributed to her unusual conduct. But, this ■does not change the result of the case. The essential issues concern Carroll’s intoxication.
The next question is whether Mrs. Daigle knew or should have known that Carroll was intoxicated. There may be some question as to whether she knew he had at least 4 beers by the time he picked her up at about 11:00 p. m.; but certainly she knew he drank during the remainder of the evening. She sat with him, danced with him and drank with him. His condition was as obvious to her as it was to Dr. Hair and the other witnesses. Clearly, she knew or ■should have known that his faculties were materially impaired.
As stated above, there can be no question that Carroll’s intoxication caused the accident. On a straight and level portion of the highway the car simply veered gradually into the ditch. No other explanation of the accident is shown.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.