226 So.2d 181 (1969)
Kenneth Wayne MATTHEWS et al., Plaintiffs and Appellees,
v.
ALL AMERICAN ASSURANCE COMPANY, Defendant and Appellant.
No. 2798.
Court of Appeal of Louisiana, Third Circuit.
August 21, 1969.
Rehearing Denied September 16, 1969.
*182 Watson, Blanche, Wilson, Posner & Thibaut, by Peter T. Dazzio, Baton Rouge, for defendant-appellant.
Edwards, Edwards & Broadhurst, by Stephen A. Stefanski, Crowley, for plaintiffs-appellees.
Before TATE, FRUGE and CULPEPPER, JJ.
CULPEPPER, Judge.
The widow and children of Lua Matthews, who was killed in an automobile accident, sue to recover accidental death benefits of $1,500 provided by a policy issued by the defendant. From an adverse judgment, defendant appeals.
The sole issue is whether recovery should be denied under a policy clause excluding coverage for "death * * * caused or contributed to directly or indirectly, wholly or partly * * * While intoxicated * * *"
*183 The general facts are that on March 20, 1967 at about 8:30 p. m. the deceased was driving his pickup truck on State Highway 35 just north of Kaplan. He failed to negotiate a curve and went straight off the highway, across a ditch and embankment into a field, where the vehicle overturned. He died instantly of a broken neck.
The state trooper who investigated the accident requested the coroner to take a blood sample for purposes of testing the percentage of alcohol in the blood. It was stipulated by the parties that such a blood sample was taken by Dr. L. M. Villien, the parish coroner, and was examined by the Crime Laboratory in Baton Rouge.
Mr. Paul L. Kolb, Jr., the chemist who performed the test, testified the results showed the blood contained .29% alcohol by weight. This witness testified futher "When the alcohol content goes above point 15, a person is considered under the influence of alcohol. When a person's alcohol level reaches point 20 to point 30 a person is extremely dizzy * * * he cannot stand straight * * * his speech is slurried * * * his eyes are somewhat bloodshot and he is somewhat on the point of approaching unconsciousness due to alcohol content."
Dr. Villien, the coroner who took the blood sample immediately after the accident, testified that he smelled alcohol on the body. With regard to the test, he stated that most authorities consider .15% sufficient for intoxication and that he would consider .29% as showing intoxication. The physician further explained that the alcohol content of the blood does not change after death, because the body organs which dissipate alcohol from the blood have ceased to function. Hence, the percentage of alcohol in the decedent's blood at the time of the accident is fixed at .29% by weight.
Against this strong proof of intoxication, the plaintiffs introduced the following evidence. Mrs. Matthews, wife of the decedent, testified he left home at approximately 1:35 p. m. on the day of the accident, to do some work on a neighbor's well pump, and that he was completely sober when he left. Mr. Dua LeBlanc, on whose well pump the decedent worked, testified Mr. Matthews left his place about 3:30 p. m. and that he did not appear to have had anything to drink.
Mr. Nediese Gaspard and Mr. Exalton Broussard testified they saw the decedent driving his truck on the highway shortly before the accident and did not observe anything abnormal about the manner in which the vehicle was being operated.
Finally, plaintiffs introduced the testimony of Otto Trahan, owner of a bar in Kaplan. He testified the decedent came to his bar at about 7:30 p. m. on the day of the accident and drank "two small, little beers." The witness stated further that the decedent left about 8:00 p. m. and that he did not appear to be intoxicated.
There is no dispute as to the applicable law. The Louisiana Insurance Code, LSA-R.S. 22:213, subd. B(10), permits such policies to exclude "any loss sustained * * * in consequence of the insured's being intoxicated * * *" The statute does not further define intoxication. We will apply the definition established by our jurisprudence in negligence cases. In order to prove that one is incapable of operating a motor vehicle by reason of intoxication, it need not be shown that he was drunk, but only that he had a sufficient quantity of intoxicants to make him lose normal control of his mental and physical faculties. See Jones v. Continental Casualty Company of Chicago, 246 La. 921, 169 So. 2d 50 (1964) and the cases cited therein.
The trial judge gave no reasons for judgment. However, it is apparent he found either (1) that defendant had not sustained its burden of proving intoxication or (2) that there was no causal connection shown between the intoxication and the accident.
*184 It is apparent the trial judge gave more weight to plaintiffs' lay witnesses than to the testimony of defendants' experts concerning the blood test. We cannot agree.
We find no case from our appellate courts which specifically discusses the weight to be given expert testimony regarding blood alcohol tests. However, the general rule should apply. Expert testimony as to such tests is not conclusive. The weight to which it is entitled depends on the witnesses' training, experience, possible bias and opportunity for observation. Also important are his logic, reasoning and the basis for his opinion, such as the tests involved here. Town of Slidell v. Temple, 155 So.2d 681 (La.App. 1st Cir. 1963); Austin v. Industrial Lumber Company, La. App., 8 So.2d 727; Nixon v. Pittsburg Plate Glass Company, La.App., 161 So.2d 361. See also 32 C.J.S. Verbo Evidence § 588(2) which discusses blood alcohol tests generally.
In the present case there is no evidence discrediting the expert witnesses or the test itself. It was stipulated that the blood taken from the decedent was the same that was tested. The chemist who made the test testified it showed .29% of alcohol by weight in the blood. No evidence was introduced by plaintiffs to dispute the results of the test nor to contradict the opinions of the experts as to its interpretation.
Plaintiffs contend that the testimony of the two experts that .29% is sufficient to cause a high degree of intoxication, is outweighed by the testimony of plaintiffs' witnesses that the decedent appeared to be in control of his faculties shortly before the accident. As is shown by the above review of the evidence, only one witness actually supports this contention. Mr. Trahan, the bartender, testified decedent left his bar at about 8:00 p. m., after having "two small little beers" and that he appeared to be sober. As to the other witnesses, Mr. LeBlanc last saw the decedent about 3:30 p. m., and Mrs. Maithews last saw her husband at about 1:35 p. m. There was ample time after that for decedent to become intoxicated. Certainly little weight can be given to the testimony of Mr. Gaspard and Mr. Broussard who saw the decedent driving normally down the highway. The physical fact is that shortly thereafter he failed to negotiate a curve and went straight off the highway into a field.
Plaintiffs also argue that people vary in their tolerance for alcohol. The argument appears to be that .29% is not sufficient for intoxication in all cases. Our answer to this contention is that two qualified experts testified positively to the contrary and there is no expert testimony questioning their opinions.
Plaintiffs point out that LSA-RS 32:662, which creates a presumption of intoxication where .10% or more by weight of alcohol is found in a person's blood, applies only to criminal cases and not to civil actions. We certainly accept the fact that this statute does not apply in the present case.
We conclude that the testimony of the two expert witnesses is impartial, logical and based on a well recognized test. The testimony of plaintiffs' witnesses is not sufficient to outweigh this very strong expert opinion.
The final issue is whether there was any causal connection between the intoxication and the accident. Having concluded intoxication was proved, there can be little question it was a contributing cause of decedent's running off the highway across a ditch into a field. For similar holdings see Geddes & Moss Undertaking and Embalming Company, Ltd. v. First National Life Insurance Company, 167 So. 881 (Or.App.1936); Daigle v. United States Fidelity & Guaranty Company, 187 So.2d 214 (La.App. 3rd Cir. 1966); Brasseaux v. First National Life Insurance Company, 102 So.2d 256 (La.App. 1st Cir. 1958).
*185 The judgment appealed is reversed. Judgment is now decreed in favor of defendant dismissing the demands of the plaintiffs at their costs. All costs of this appeal are assessed against the plaintiffs appellees.
Reversed and rendered.

On Application for Rehearing.
En Banc. Rehearing denied.