318 So.2d 613 (1975)
Helen Castille RICHARD, Plaintiff-Appellee,
v.
AMERICAN HOME ASSURANCE COMPANY, Defendant-Appellant.
No. 5120.
Court of Appeal of Louisiana, Third Circuit.
September 5, 1975.
Rehearing Denied October 1, 1975.
Writ Refused November 18, 1975.
Dubuisson, Brinkhaus, Guglielmo & Dauzat by Edward B. Dubuisson, Opelousas, for defendant-appellant.
Pucheu & Pucheu by Jacque B. Pucheu, Jr., Eunice, for plaintiff-appellee.
*614 Before HOOD, CULPEPPER and MILLER, JJ.
HOOD, Judge.
Mrs. Helen Castille Richard, as natural tutrix of her two minor children, seeks to recover the proceeds of an accidental death and injury policy issued by defendant, American Home Assurance Company, to her deceased husband, John C. Richard. She also demands penalties under LSA-R. S. 22:656. The two minor children were named as beneficiaries in that policy. Judgment was rendered by the trial court awarding plaintiff the maximum benefits provided in the policy, but rejecting her demand for penalties. Defendant appealed. Plaintiff answered the appeal, praying for penalties.
The principal issue presented is whether the death of the named insured is excluded from coverage by the terms of the policy. To resolve that issue it is necessary to determine whether the insured was intoxicated at the time of the accident which resulted in his death, and if so, whether his intoxication was a contributing cause of that accident.
The insured, Richard, was killed in a one car accident which occurred about 4:15 A. M. on March 14, 1974, on Louisiana Highway 13, about three miles south of Eunice, Louisiana. The vehicle he was driving left the road as he was attempting to negotiate a slight curve in that thoroughfare. It skidded approximately 67 yards partially on the shoulder of the highway, collided with an embankment and then traveled about 59 yards through the air before it again touched the ground. After striking the ground, the automobile skidded on its roof and tumbled end over end covering an additional distance of about 40 yards, and it then came to rest on its wheels in a rice field. The investigating officer estimated the speed of the vehicle at about 85 miles per hour at the time it left the highway.
The evidence indicates that the driver, Richard, died about 30 minutes after the accident occurred as the result of injuries which he sustained in that accident.
Richard was the named insured in an accidental death benefit policy issued by defendant, American Home Assurance Company, on December 12, 1973. The policy was in full force and effect when the accident occurred. The death of the insured was accidental, within the terms of the policy, and plaintiff is entitled to recover the benefits claimed unless the exclusions set out in the policy are applicable. Defendant contends that the accident and the resulting death of Mr. Richard are excluded from coverage by the provisions of the policy.
Part III of the policy, under the heading "Exclusions," contains the following pertinent language:
"This policy does not cover any loss to an Insured Person caused by or resulting from: . . . (8) injury sustained while intoxicated;. . ."
A sample of the decedent's blood, taken shortly after the accident occurred, was tested at the State Crime Laboratory in Baton Rouge, and that test revealed that at the time of Richard's death his blood contained.19 percent alcohol by weight. The parties stipulated that a blood sample was taken from the deceased, John C. Richard, that it was tested properly, and that the blood sample in fact did have a blood alcohol content of .19 percent. The report of the criminalist at the State Crime Laboratory showing the result of the above test was received in evidence without objection.
Dr. Joseph Theodore Brierre, Jr., a pathologist who has had extensive experience in studying the effect of alcohol on the human body, testified that a person with a blood alcohol content of .19 percent would be "seriously intoxicated," and that he would be "seriously impaired in performing any skilled function, and by all means should not be driving." In his opinion, the likelihood of such a person being involved in an accident while attempting to drive an *615 automobile is 50 times greater than that of a person who has not been drinking. He stated that a person having a blood alcohol content of .19 percent:
". . . may be in the depressive phase of alcohol depression versus the euphoric phase, and he has certain nerve conduction impairment which results in difficulty in interpreting visual experiences. Many individuals at this level will either hallucinate or see or misinterpret things that border on hallucination."
According to Dr. Brierre, in order for a person of the decedent's height and weight to acquire a blood alcohol content of .19 percent, he would have had to consume a minimum of 10 to 12 ounces of 100 proof alcohol, or a minimum of from 12 to 24 cans or bottles of beer, over a four hour period. He stated that his opinions were within "ninety-five percent confidence limits," and he conceded that if the blood alcohol content of Richard did not affect him, then the decedent "would be one of those very rare individuals who has this very unusual idiosyncratic type of response." He testified, however, that the likelihood of his observations being "due to chance rather than to reality . . . is about one in a thousand."
We are impressed with Dr. Brierre's qualifications as an expert on the effect which alcohol has on the human body. He was the only expert who testified on that subject, and we accept his testimony as to the effect which a blood alcohol content of.19 percent has on the human body.
Several lay witnesses saw the decedent at three different bars or lounges in or near Eunice during the evening of March 13 and the early morning hours of March 14, 1974, shortly before the accident occurred. They testified that on all of those occasions he walked, talked and acted normally, and that he did not appear to be intoxicated. These witnesses indicated that he consumed very few alcoholic beverages that evening, the most any of them conceded that he consumed was a maximum of seven cans of beer between 7:00 P.M. on March 13 and 2:00 A.M. on March 14.
The last time any of these witnesses saw the decedent prior to his death, however, was at 2:00 A.M. on March 14, except that one witness saw him very briefly at 2:05 or 2:15 A.M., and another caught a glimpse of him driving his car at about 2:30 A.M. that date. The accident occurred at 4:15 A.M., however, within three miles of the places where these witnesses had seen him, and it is apparent that he drove at least a part of that distance at an extremely high rate of speed. If he had consumed not more than seven cans of beer up to 2:00 A.M., then he obviously would not have had a blood alcohol content of .19 percent when last seen by the lay witnesses. The evidence is uncontradicted that his blood alcohol content was at that level when the accident occurred, so the conclusion is inescapable that Richard either consumed much more alcohol during the evening than these witnesses saw him consume, or he consumed substantial quantities of alcohol after they last observed him at 2:00 A.M. on March 14 and before the accident occurred.
The trial judge made no determination as to whether the insured was intoxicated at the time the accident occurred. He held, instead, that the cause of Richard's death was "the excessive speed at which he was driving," stating in his reasons for judgment that "the court is not convinced that the possible intoxication of the deceased was the cause of his death," and that "this court cannot say that the death resulted as a cause of the intoxication." Judgment accordingly was rendered by the trial court in favor of plaintiff awarding her the maximum benefits provided in the policy. We are unable to agree with some of the conclusions and with the result reached by the trial court.
The facts and the issues presented in Matthews v. All American Assurance Company, 226 So.2d 181 (La.App. 3 Cir. *616 1969), were almost identical to those presented here, except that the blood alcohol content of the decedent in Matthews was .29 percent. The plaintiffs argued there, as is argued in the instant suit, that people vary in their tolerance for alcohol, and that the court should have accepted the lay testimony that the decedent appeared to be in control of his faculties shortly before the accident, rather than the testimony of the experts that he was intoxicated. They also argued alternatively that the accident resulted from the insured's failure to negotiate a curve, and not from his intoxication. We held in that case that the decedent was intoxicated, as that term was used in the exclusionary clause of the policy, and that there was a causal connection between his intoxication and the accident. In determining that the insured was intoxicated, we said:
". . . In order to prove that one is incapable of operating a motor vehicle by reason of intoxication, it need not be shown that he was drunk, but only that he had a sufficient quantity of intoxicants to make him lose normal control of his mental and physical faculties. . . ."
A similar issue also was presented in Young v. All American Assurance Company, 243 So.2d 894 (La.App. 3 Cir. 1971), where the insured was found to have a blood alcohol content of .25 percent at the time of the accident and his resulting death, and several lay witnesses testified that he had not had anything to drink on the date of the accident. We quoted extensively from Matthews, supra, and held that the insured was intoxicated at the time the accident occurred, and that "the exclusionary section of the policy bars plaintiff from recovery."
In Jones v. Continental Casualty Co. of Chicago, Ill., 246 La. 921, 169 So.2d 50 (1964), a blood test of the driver of one of the vehicles involved in the accident revealed that he had a blood alcohol content of .11 percent, and the coroner stated that that was sufficient to cause him to be intoxicated. Despite the testimony of lay witnesses that the driver had not been drinking, our Supreme Court held that "the alcoholic content of the driver's blood was sufficient to establish that he was intoxicated and that his mental and physical faculties were materially impaired at the time the collision occurred."
The facts in the instant suit show that Richard had a blood alcohol content of .19 percent at the time the accident occurred. We think that evidence, considered with the testimony of Dr. Brierre, is sufficient to establish that he was intoxicated. In addition to the results of the blood test, however, we think the greatly excessive speed at which he was driving his car when he lost control of it shows irrational conduct on his part, and that tends to confirm the opinion of Dr. Brierre that he was intoxicated.
We conclude that the decedent, Richard, was intoxicated when the accident occurred, and that his intoxicated condition was a proximate and contributing cause of the accident.
Defendant contends that the exclusionary clause involved in this case applies, even if the evidence should fail to show a causal connection between the intoxication and the accident. It is unnecessary for us to consider that argument in view of our conclusion that Richard's intoxication was a contributing cause of the accident.
Plaintiff points out that the decedent caused his automobile to skid for 67 yards before it completely left the road, and she argues that that shows that he had control of his faculties and that he thus was not intoxicated. We find no merit to that argument. Our view is that his intoxication was a substantial and contributing cause of his action in driving at an excessive rate of speed and of his failure to negotiate the slight curve. The fact that he had presence of mind enough to apply his brakes when the car was partially on the shoulder, does not justify a conclusion that *617 he had normal control of all of his mental and physical faculties either at that time or just before that emergency occurred.
Plaintiff contends further that since the policy issued by defendant did not contain a definition of the word "intoxicated," the "ordinary everyday" meaning of the word should be applied. She argues that in view of the fact that the policy does not define "intoxicated" in terms of the blood alcohol content of the insured, the court should consider only the testimony of the lay witnesses in determining whether the insured was intoxicated, as that term is ordinarily understood. She points out that the lay witnesses described his appearance and actions as being normal shortly before the accident occurred.
We believe that the interpretation which we placed on the word "intoxicated" in Matthews v. All American Assurance Company, supra, is proper in this case. As already pointed out, we held in effect that a person is intoxicated if he has had "sufficient quantity of intoxicants to make him lose normal control of his mental and physical faculties." We think the alcohol content of a person's blood is one factor to consider in determining whether he is intoxicated.
Plaintiff contends, finally, that the trial judge erred in refusing to permit her to introduce testimony tending to show that the decedent, Richard, frequently drank substantial quantities of beer without showing signs of intoxication. By proffer of proof, she offered the testimony of several witnesses to the effect that prior to the accident the insured often drank from four to six cans of beer per hour, that he continued drinking beer at that rate for four consecutive hours or more, and that immediately thereafter he demonstrated his ability to drive racing cars, to play pool and to perform highly skilled mechanical work. By means of that testimony plaintiff hoped to show that the insured was one of the rare individuals referred to by Dr. Brierre who was affected very little by alcohol. The trial judge refused to permit the testimony on the ground that it was immaterial to the issues presented here.
In our opinion, the ruling of the trial judge was correct. We believe that the decedent's actions in driving at such a highly excessive rate of speed after consuming substantial quantities of alcohol constituted sufficient proof of the fact that he had lost control of at least some of his normal mental faculties. It is immaterial whether on prior occasions he had been able to perform skilled activities after consuming large quantities of beer.
Since we have concluded that plaintiff is not entitled to recover the proceeds of the policy, it necessarily follows that defendant is not liable for penalties and attorney's fees because of its refusal to pay those proceeds. That part of the judgment of the trial court which rejects plaintiff's demand for penalties and attorney's fees, therefore, will be affirmed.
For the reasons assigned, that part of the judgment appealed from which condemns defendant to pay to plaintiff the sum of $10,000.00, with interest and costs, is reversed, and judgment is hereby rendered in favor of defendant, American Home Assurance Company, and against plaintiff, Mrs. Helen Castille Richard, as natural tutrix of her two minor children, rejecting plaintiff's demands at her cost. The remainder of the trial court judgment, and particularly the part which rejects plaintiff's demands for penalties under LSA-R.S. 22:656, is affirmed. The costs of this appeal are assessed to plaintiff-appellee.
Affirmed in part and reversed in part.