631 So.2d 1313 (1994)
Theron G. OWENS
v.
Brad E. ANDERSON, Government Employees Insurance Company and State Farm Insurance Company.
No. 93-CA-1566.
Court of Appeal of Louisiana, Fourth Circuit.
January 27, 1994.
*1314 Edward J. Rivera, Sessions & Fishman, New Orleans, for defendants/appellants.
Joseph W. Thomas, New Orleans, for plaintiff/appellee.
Before BARRY, WARD and WALTZER, JJ.
WALTZER, Judge.
Plaintiff's uninsured motorist carrier appeals from a judgment in accordance with a jury verdict granting plaintiff general and special damages in the amount of $50,000.00 and punitive and exemplary damages under C.C. Art. 2315.4 in the amount of $50,000.00.
Because defendant Brad Anderson settled with plaintiff for $10,000 prior to trial, the only witnesses presented at trial were plaintiff Theron Owens, his mother Joyce Owens, his treating physician Dr. Raul Diaz, private investigator Michael Breaux and alleged witness Eric Pounds.
At 2 a.m. on May 7, 1988, plaintiff Theron Owens, who was receiving worker's compensation, was returning from a late night snack at Denny's Restaurant when he was rearended by a vehicle driven by Brad Anderson. Owens testified he walked to the back of his vehicle to examine the damages. According to Mr. Owens, Mr. Anderson also got out of his vehicle to inspect the damage, said that he did not want to call the police, said that he would get his registration and license, returned to his vehicle and drove off. Plaintiff also testified that he had observed the defendant's vehicle weaving shortly before impact, that he observed the defendant drinking from an open can of beer immediately after the accident, and that the defendant smelled of beer.
Eric Pounds testified to three versions of his participation in the accident. Pounds testified that he saw the entire accident from behind and thus saw defendant's vehicle weaving and observed defendant drinking beer. He also testified that he did not come upon the scene until after the collision but before defendant drove away, thus not seeing the weaving or impact, but observing defendant drinking beer and driving off. Lastly, Pounds testified that he did not observe the weaving, impact, beer drinking or driving off, but arrived on the scene after defendant had already driven off at which time plaintiff asked him to follow the car and get the *1315 license plate number. It is uncontroverted that Eric Pounds followed the car and obtained the license number, returning to the accident site therewith after the police had arrived. Although Mr. Pounds testified that he did not know the plaintiff prior to the accident, he later testified that he knew plaintiff's cousin as they attended Delgado together. The police report did not indicate Eric Pounds as a witness, but rather an Eric Marvin.
The only medical testimony presented was by plaintiff's own treating physician who testified he saw Mr. Owens on May 11, 1988, four days after the accident. At that time plaintiff exhibited neck muscle spasm that had not been there before the accident. Dr. Diaz testified that muscle spasm is an objective sign of injury which cannot be faked by a patient. He concluded that plaintiff suffered a neck strain. He further testified that the neck spasm was no longer evident at the June 28, 1988 office visit and that the neck strain resolved in 6 weeks at the most.
Dr. Diaz and his former partner, Dr. Elmorshiddy, had been treating Theron Owens since May of 1987 for back injuries resulting from an auto accident which occurred within the course and scope of his employment as a maintenance man with Temple Sinai. As a result of the worker's comp injury plaintiff had already undergone extensive back surgery. At the May 11, 1988 office visit, plaintiff also complained that as a result of the second auto accident, he suffered from back pain. Dr. Diaz testified that unlike the muscle spasms in the neck injury there were no objective signs of injury to the back. Mr. Owens did exhibit subjective signs of injury which Dr. Diaz believed could be and in this case were faked, especially in the straight leg raising test during which plaintiff exhibited 20% mobility on the left leg. Dr. Diaz testified that Mr. Owens probably suffered a strain to the lower back area, although his back symptoms before and after the accident were the same. Plaintiff continued returning to Dr. Diaz with complaints of back pain until December 22, 1988, when Dr. Diaz refused to treat him any longer. The day before, a private investigator hired by the worker's comp insurer showed Dr. Diaz a surveillance tape of Theron Owens. Although Theron Owens had been indicating to Dr. Diaz that he could only lift his leg 20% on the straight leg raising test, the tape indicated Mr. Owens doing 90% movements while washing his car. Normal is 70% or over. Dr. Diaz testified that plaintiff's movements in the tape were inconsistent with the clinical picture that plaintiff presented to him during office visits and that he felt the plaintiff was faking and trying to "put one over" on him. He also mentioned that throughout this period plaintiff had been consistently complaining of pain and consistently receiving prescriptions for Percodan, a controlled substance. Dr. Diaz testified that complaints of pain are inconsistent with the ability to move as shown on the tape. Dr. Diaz, plaintiff's own treating physician, refused to treat plaintiff any longer on the grounds that he believed that plaintiff was exaggerating his injury and faking his straight leg raising test.
Michael Breaux was the private investigator for the worker's comp insurer who had filmed the videotape. He testified as to his eyewitness observations of Mr. Owens' condition and as to the tape which was admitted into evidence.
Joyce Owens is the plaintiff's mother. Plaintiff alternatively resides with his mother or his girlfriend and child. When he resides with his mother, he financially contributes to her household. Joyce Owens testified as to her son's pain.
Appellant raises four specifications of error:
1. The trial court erred in admitting plaintiff's entire deposition which contained prejudicial and inadmissible evidence.
2. The trier of fact abused its discretion in awarding $50,000.00 for a short term soft tissue injury.
3. The trier of fact erred as a matter of law in holding the plaintiff's UM carrier liable for exemplary damages under C.C. Art. 2315.4 for the defendant's driving while intoxicated.
4. The trial court erred as a matter of law when it failed to limit the judgment to the policy limits.
*1316 Turning to the second specification of error, initially, we agree with appellants that the jury abused its discretion in awarding $50,000 for a 6-week neck strain. There is no evidence in the record of a 7-month neck injury and there is no objective evidence of a back injury. Plaintiff's treating physician's testified that plaintiff was faking.
The scope of appellate review of damage awards is limited. See: Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Rosell v. ESCO, 549 So.2d 840 (La. 1989); Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993); Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). In Youn, the Louisiana Supreme Court stated:
[T]he discretion vested in the trier of fact is "great", and even vast, so that an appellate court should rarely disturb an award of general damages.
Before a court of appeal can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its discretion in making its award. Coco v. Winston Industries, Inc., supra. It is only after analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reasons be considered excessive or insufficient. Reck v. Stevens, 373 So.2d 498, 501 (La.1979). The appellate court can disturb the award "only to the extent of lowering it (or raising it) to the highest (or lowest) amount which is reasonably within the discretion afforded that court." Coco, supra at 335.
Mindful of the Supreme Court's standards discussed above, we find that plaintiff failed to carry his burden of proving that he suffered a back injury and failed to carry his burden of proof that his neck injury was longer than 6 weeks. Because plaintiff failed to carry his burden, the award of $50,000.00 was a clear abuse of discretion. In order to determine the proper amount to be awarded, we have reviewed the particular facts of this particular case as applied to this particular plaintiff as well as reviewed the damage awards in similar cases including the following: Turcich v. Baker, 594 So.2d 505 (La. App. 5th Cir., 1992), $7,000.00 for complaints of neck pain for one and a half years for aggravation of a preexisting arthritic condition, though two months post-accident, there were no objective findings of injury; Francis v. Commercial Union Ins. Co., 594 So.2d 1025 (La.App. 3rd Cir., 1992), $10,000.00 for six-month cervical and lumbar strain; Howard v. City of Alexandria, 581 So.2d 321 (La.App. 3rd Cir., 1991), $10,000.00 for one year intermittent lumbar and cervical soft tissue injury; Blankenship v. Champion Ins. Co., 599 So.2d 505 (La.App. 3rd Cir., 1992), $7,500.00 for one year aggravation of preexisting neck injury; Marshall v. A & P Food Co., 587 So.2d 103 (La.App. 2nd Cir., 1991), $10,000.00 for six-month cervical and lumbosacral strain; Ducote v. State, 583 So.2d 590 (La.App. 5th Cir., 1991), $50,000.00 reduced to $10,000.00 for one year mild back and neck strain; McConnell v. Schwegmann Bros. Giant Supermarkets, Inc., 600 So.2d 778 (La. App. 5th Cir., 1992), $5,000.00 for ten-month headaches, neck, lower back and shoulder pain. Based upon our review of the facts of this particular case and this particular plaintiff and the jurisprudence, we conclude that the maximum plaintiff should be awarded is $10,000.00. Accordingly, the general and special damage award is reduced from $50,000.00 to $10,000.00.
Turning to the exemplary damages, we note that C.C. Art. 2315.4 provides:
In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries.
Appellant argues that the trier of fact erred in finding plaintiff's Underinsured/Uninsured Motorist (hereinafter "UM") Carrier liable for exemplary damages under C.C. Art. 2315.4 because as a matter of public policy exemplary damages should not be awarded against UM carriers and because there was no medical testimony indicating defendant's blood alcohol level.
*1317 The Louisiana Supreme Court has decided the policy issue in Sharp v. Daigre, 555 So.2d 1361, 1364 (La.1990) wherein the court stated:
In addition to arguments based on legislative intent, policy language, and loss of subrogation rights, Aetna and Acceptance maintain that public policy should prevent payment of exemplary damages by UM carriers. First, they suggest that it is unfair to require them to pay punitive damages; they have done nothing wrong and should not be punished. This argument overlooks the nature and function of insurance companies: they pay for the harm that other people cause. In exchange for providing this guarantee of protection to thousands of motorists, they earn a profit. Having accepted insurance premiums from Harvey Sharp, they must fulfill their side of the bargain. Cf Lavender v. State Farm Mutual Automobile Insurance Co., 828 F.2d 1517 (11th Cir.1987).
The second public policy argument asserts that payment of exemplary damages by insurance companies will encourage drunk driving and sabotage the deterrent effect of LSA-C.C. art. 2315.4. Aetna and Acceptance are not the insurers of the drunk driver in this case; their obligation is to the innocent victim of the accident. Payment of damages by the insurers to their obligee, the victim, will neither encourage nor discourage drunk driving. Many Louisiana courts have already rejected this argument as it applies to liability insurance.
Finally, Aetna and Acceptance contend that allowing recovery of exemplary damages from UM carriers will cause insurance companies to raise their premiums, thereby hurting the state's citizens. This argument is speculative. Furthermore, LSA-R.S. 24:1406 requires symmetrical treatment of liability and UM policies. "No automobile liability insurance ... shall be delivered or issued for delivery in this state ... unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy." Id. In other words, the legislature has guaranteed that an insured person who buys $100,000 of liability insurance to compensate those he might accidentally injure in the course of using his automobile will have equal protection in the event that he is injured by an uninsured or underinsured motorist. The purpose of paying an extra premium for UM coverage is protection from the failure of other motorists to be adequately insured. Fairness to UM policy holders must prevail over the speculative harm suggested by defendants.
Having paid for UM coverage in both his personal and business automobile policies and having been awarded exemplary damages that exceeded the settlement received from the tortfeasor, Harvey Sharp is entitled to recover those damages from his UM carriers, Aetna and Acceptance.
As stated by the Supreme Court, State Farm's public policy argument is more properly addressed to the legislature. Alternatively, State Farm can rewrite its policy language. See: Eaglin v. Champion Ins. Co., 558 So.2d 284 (La.App. 3rd Cir., 1990).
Appellant also argues that exemplary damages should not have been awarded under C.C. Art. 2315.4 which requires as an element "intoxication" as there was no medical testimony indicating defendant's blood alcohol level as proof of intoxication. While most of the reported C.C. Art. 2315.4 cases included a blood alcohol level because a driver was tested and ticketed by the police, in cases such as the instant one where the driver fled the scene and was not apprehended or otherwise timely tested, blood alcohol evidence is not available. Does this mean that all an intoxicated driver need do to avoid 2315.4 liability is to successfully flee the accident scene? We think not. We note that it is well established that the statutory presumption of intoxication of .10 in criminal cases does not apply to civil cases. R.S. 32:662; Prestenbach v. Sentry Ins. Co., 340 So.2d 1331, 1334 (La.1976); Bourgeois v. State Farm Mutual Automobile Insurance Co., 562 So.2d 1177, 1183 (La.App. 4th Cir., 1990), writ denied 567 So.2d 611 (La.1990). Blood alcohol level is not the only way in which intoxication can be established in a civil case. The triers of fact can look to the *1318 totality of the circumstances as the Fifth Circuit did in Levet v. Calais & Sons, Inc., 514 So.2d 153, 159 (La.App. 5th Cir., 1987):
In order to prove that a person is incapable of operating a motor vehicle by reason of intoxication, it need not be shown that he was drunk, but only that he had a sufficient quantity of intoxicants to make him lose normal control of his mental and physical faculties. Jones v. Continental Casualty Co. of Chicago, III., 246 La. 921, 169 So.2d 50 (1964); Richard v. American Home Assurance Co., 318 So.2d 613 (La. App. 3rd Cir.1975) writ denied 322 So.2d 779; Matthews v. All American Assurance Co., 226 So.2d 181 (La.App. 3rd Cir.1969) writ denied [254 La. 923] 228 So.2d 483.
The evidence showed Richoux was familiar with Highway 3127 and its intersection with Highway 20 in Vacherie. It was a clear day, and the intersection had a flashing red light and a stop sign for traffic traveling south on Highway 3127. Richoux was driving about 60 miles per hour immediately prior to the collision. However, he inexplicably entered into the opposite lane of traffic of La. 3127 and paid no heed to the stop sign or flashing red light as he continued through the intersection and hit the Levet vehicle broadside. The evidence also established, that the three occupants of the Calais vehicle had consumed all of one six pack of beer; that by the time of the collision at least one occupant had consumed two beers from the second six pack and Richoux had consumed `some' of the beer from the second six pack; and that the beer was consumed during the trip from Port Allen to Vacherie, approximately one hour in duration.
Based on this evidence the jury concluded that Richoux's actions of driving in the wrong lane of traffic and of disregarding the stop sign and light constituted a `wanton or reckless disregard for the rights and safety of others', and that the actions were attributable to Richoux's intoxication while operating the motor vehicle. A review of the record evidence convinces us that the jury's conclusion that Richoux was intoxicated at the time of the accident is not clearly wrong, and therefore we will not disturb it. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Likewise, we find no `clear abuse' of discretion by the jury in setting the amount of the award at $100,000 per child. Accordingly, the award of $100,000 per child in exemplary damages is affirmed.
In the instant case, testimony indicated that the defendant driver was swerving and driving in an erratic manner immediately before the collision, that he smelled of beer, that he was seen drinking from an open can of beer immediately after the accident, that he did not want the police called and that he fled the scene. These are sufficient facts on which the trier of fact could have found "intoxication". We further note that in Bourgeois, supra at 1183, this court stated:
In light of the broad efforts to educate the public concerning drinking and driving, it is common knowledge that even a minimal amount of alcohol may cause a functional impairment. Everyone knows that an intoxicated motorist is unable to react quickly, or, in some instances, to even retain control of the vehicle. Thus, when a person who has been drinking drives, he knows that the odds of being involved in a serious accident increase with each and every drink. A motorist who has consumed even a small amount of alcohol is aware that his alcohol consumption might affect his driving ability. Thus, he gets behind the wheel only at the risk that he might cause an accident. Therefore, the act of driving after consumption of a couple of beers, or after participating in a cocktail hour, not only exposes a driver to possible criminal consequences, but also may expose him to civil liability for negligence, provided there is proof of the effect of the alcohol on that particular driver.
Appellant's next specification of error is that the trial court erred as a matter of law in failing to limit the judgment to the defendant's policy limits. We agree. In Levet v. Calais & Sons, Inc., supra at 159, the court quoted:
In R.J. D'Hemecourt Petroleum v. McNamara, 444 So.2d 600 (La.1983) the Supreme Court at page 601 stated the legal effect of a stipulation as follows:

*1319 `A stipulation has the effect of a judicial admission or confession, which binds all parties and the court. Placid Oil Company v. A.M. Dupont Corporation, 244 La. 1075, 156 So.2d 44 [sic 444] (1963). Stipulations between the parties in a specific case are binding on the trial court when not in derogation of law. Wickliffe v. Cooper and Sperrier, 161 La. 417, 108 So. 791 (1926).'
In the instant case, the parties stipulated to UM policy limits of $25,000.00 per person and that State Farm is entitled to a credit of $10,000.00 for the sums previously paid by GEICO and Brad Anderson in settlement. Accordingly, the wording of the judgment will be amended to clarify the meaning of the judgment in accordance with the stipulation.
Lastly, appellant argues that the trial court erred in admitting the entire deposition. While the entire deposition was admitted into evidence, there is no indication that the jury read or requested to see the entire deposition. In light of our holdings on the other three specifications of error, this specification of error is moot.
For the reasons discussed, the judgment of the district court is amended as follows and as amended is affirmed:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Theron Owens, and against the defendant, State Farm Mutual Automobile Insurance Company, in the amount of $10,000.00 for general and special damages with legal interest from the date of judicial demand, subject to a $10,000.00 credit to State Farm; and an additional amount of $50,000.00 in exemplary damages with legal interest from the date of judgment, subject to the policy limit of $25,000.00, and for all costs of these proceedings.
AMENDED & AFFIRMED.