514 So.2d 153 (1987)
Kenneth LEVET and Carol Ann Levet Lassere
v.
CALAIS & SONS, INC. and Acceptance Insurance Companay.
No. 86-CA-724.
Court of Appeal of Louisiana, Fifth Circuit.
September 18, 1987.
Opinion Concurring in Part and Dissenting in Part September 24, 1987.
Rehearing Denied November 17, 1987.
*154 J.J. McKernan, McKernan & Taylor, Baton Rouge, for plaintiffs/appellees.
Dermot S. McGlinchey, Frederick R. Campbell, Lisa J. Miley, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, for defendants/appellants.
Thomas J. Grace, Beverly M. Klundt, Courtenay, Forstall, Grace & Hebert, New Orleans, for defendant/appellant, Calais & Sons, Inc.
Before KLIEBERT, BOWES, GAUDIN, WICKER and GOTHARD, JJ.
GOTHARD, Judge.
Defendants, Calais & Sons, Inc. (Calais) and its insurer, Acceptance Insurance Company (Acceptance) brought this suspensive appeal from a judgment rendered on a jury verdict. The judgment awarded to Kenneth Levet and Carol Ann Levet Lassere, plaintiffs, each $450,000[1] in general compensatory damages and $100,000 in exemplary *155 damages for the wrongful death of their parents, Mr. and Mrs. Carroll Levet, together with reimbursement of $9,187.66 in funeral expenses. Defendants-appellants contend the general damage award is excessive and the exemplary damage award is improper. Additionally, Acceptance, over Calais' objections made in a brief filed in this court, urges an amendment to the judgment to restrict its liability to the policy limits of $500,000 per occurrence. For the reasons which follow we revise the judgment to correct mathematical errors, to reduce the compensatory damage awards, and to limit Acceptance's liability to its policy provisions and, as revised, affirm the judgment.
This wrongful death action arises out of an automobile accident which occurred in Vacherie, Louisiana on June 27, 1985, when a vehicle driven southbound on La. Highway 3127 by Darryl Richoux, an employee of Calais, proceeded into the wrong lane of traffic, through a stop sign and flashing red warning light at the intersection of La. Highway 20, a favored street, and struck a westbound vehicle broadside occupied by Mr. and Mrs. Carroll Levet. Richoux and the Levets died instantly. Two passengers in the Richoux vehicle, Jimmy LaFont and Kelly St. Amant, employees of Calais, were injured. At trial, due to the defendants' failure to file an answer to plaintiffs' request for admissions of fact, the funeral expenses of Mr. and Mrs. Levet were fixed at $9,182.66 and the following facts were deemed admitted:[2] At the time of the accident, Richoux was acting within the course and scope of his employment and the vehicle he was operating was owned by Calais and covered under a policy of liability insurance issued by Acceptance. Further, Richoux had been instructed to use the vehicle to bring employees from the job location of that day to their homes and Calais had not employed independent drivers to perform this function even though Richoux had discussed with company supervisors the desirability of doing so because on a previous occasion he had almost fallen asleep while driving a vehicle after long hours of work.
Further, at the commencement of the trial the following stipulation was entered into:
"MR. McKERNAN: It's my understanding, Your Honor, that the Defendants have stipulated to liability in this case and fault, as the Defendant, Calais & Sons, Inc., and that the sole and approximate cause of the accident was caused through the negligence of Darryl Richeux and also as to Calais & Sons, Inc.
JUDGE MIRE: Is that your understanding of the stipulation, Mr. Rossi?
MR. GROSSEL-ROSSI: Your Honor, we talked about it
MR. McKERNAN: We talked about it last night.
JUDGE MIRE: We talked about it last night and
MR. GROSSEL-ROSSI: If we allowed them to agree to this, all I'm saying is we simply would have to go back to the jury charges against Calais and Sons. We don't need for them to testify here.
JUDGE MIRE: That's the stipulation, admitting liability as to Calais & Sons, and also that the approximate cause of the accident was the negligence of the driver.
MR. GROSSEL-ROSSI: Yes, sir. Will you stipulate to that?
MR. McKERNAN: As to Acceptance Insurance Company's policy is the policy of five hundred thousand dollar limits, single coverage? Yes. Yes, I'll stipulate to that. I'm going to introduce it into evidence, anyway,
MR. GROSSEL-ROSSI: I thought you would. I just wanted to make sure.
MR. McKERNAN: becauseyes, I'll stipulate to that, yes.
MR. GROSSEL-ROSSI: I didn't want to
JUDGE MIRE: Let's show he stipulates to that fact.

*156 MR. McKERNAN: And we alsoit was part of the Admissions, also; it's stipulated that the policy was in full force and effect at the time of the accident; is that correct?
JUDGE MIRE: That's also stipulated to?
MR. GROSSEL-ROSSI: Yes."
The plaintiffs' suit sought a recovery of $9,182.66 for funeral expenses, $300,000 for each plaintiff in general damages for the loss of love and affection, paternal compansionship, grief, mental anguish and suffering for each parent, and $1,000,000 in exemplary damages under the provisions of La.C.C. art. 2315.4. In light of the stipulations as to liability and causation, and the amount of funeral expenses, the only issues submitted to the jury were the amount of compensatory damages, and the sufficiency of evidence for an award of exemplary damages, plus the amount of same. The jury returned a verdict on the interrogatories set up by the court and accepted by the litigants' counsel as follows:
"I. In terms of dollars, how much in total damages did the plaintiffs sustain as a result of this accident? You may or may not find that the plaintiffs suffered damages in one or more of the following categories, but each blank must be filled in, either with a dollar amount, or with a `0' if you find no damage for a particular category.
KENNETH LEVET for the death of his father, Carroll Levet:

(a) Loss of love and affection Past and future $75,000.00
Loss of parental compansionship, Past
(b) and future $75,000.00
(c) Grief, mental anguish and suffering $75,000.00
(d) Funeral expenses $ 9,185.66

CAROLE ANN LEVET LASSERE for the death of her father, Carroll Joseph Levet:

(a) Loss of love and affection Past and future $75,000.00
(b) Loss of parental companionship, Past
 and future $75,000.00
(c) Grief, mental anguish and suffering $75,000.00
(d) Funeral expenses $ ___

KENNETH LEVET for the death of his mother, Pearl Levet:

(a) Loss of love and affection Past and future
 $75,000.00
(b) Loss of parental companionship, Past
 and future $75,000.00
(c) Grief, mental anguish and suffering $75,000.00
(d) Funeral expenses $ ___

CAROLE ANN LEVET LASSERE for the death of her mother, Pearl Levet:

(a) Loss of love and affection, Past and
 future $75,000.00
(b) Loss of parental companionship Past
 and future $75,000.00
(c) Grief, mental anguish and suffering $75,000.00
(d) Funeral expenses $ ___

II. Was Darryl A. Richoux, at the time of the accident operating the defendant, Calais and Son's, Inc. vehicle while under the influence of alcohol?
 &check; YES NO
III. Was Darryl A. Richoux's intoxication a legal cause of plaintiffs' damages?
 &check; YES NO
IV. What are the amounts of exemplary damages to be awarded?

(a) Kenneth Levet $100,000.00
(b) Carole Ann Levet Lassere $100,000.00"

On appeal the defendants contend the compensatory damage award was clearly excessive and influenced by improper instructions and interrogatories submitted to the jury. The jury instruction to which defendants object was as follows:
"In estimating the damages of Kenneth Levet and Carol Ann Levet Lassere, you may take into consideration the following elements; Number One, loss of love and affection, past and future; [Number Two], loss of parental companionship, past and future; Number Three, funeral and burial expenses; Number Four, grief, mental anguish and suffering; Number Five, exemplary damages."
Since the jury interrogatories listed each of the above enumerated elements of damages, and the jury awarded each plaintiff $75,000 each of elements one, two, and four for a total of $225,000 for each parent, defendants argue that the "fragmentation" of the award for a single damage, i.e., loss of society, into three separate categories resulted in triple recovery.
We first note that defendants failed to object to the jury instructions despite being asked if there were any objections thereto, and the record does not reflect any objections to the form of the interrogatories. *157 La.C.C.P. art. 1793 provides, inter alia, that a party may not assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires and states the grounds of his objection. In Lilly v. Conoco, Inc., 463 So.2d 28 (La.App. 5th Cir.1985) writ denied 464 So.2d 1382, this court refused to consider alleged errors concerning assertedly incorrect and confusing charges where the defendant failed to object at trial, noting that to do otherwise would contravene the law and jurisprudence of this state and allow a party "two bites at the apple." The requirement that an objection be lodged before the jury retires has been extended to interrogatories, and the failure to do so constitutes a waiver of objections provided the parties were given an opportunity to object. See St. Pierre v. General Am. Transp. Corp., 360 So.2d 595 (La.App. 4th Cir.1978) writ denied 362 So.2d 1386.
Moreover, plaintiffs were entitled to be compensated for the mental pain, suffering and distress, and loss of love, affection and companionship as a result of the death of their parents. See Duvernay v. St., Through Dept. of Pub. Safety, 433 So.2d 254 (La.App. 1st Cir.1983) writ denied 440 So.2d 150 and Meche v. Gulf States Utilities Co., 444 So.2d 137 (La.App. 3rd Cir.1983). Thus, even though itemization of compensatory damages into its segregate elements rather than an in globo award is not required and here may have caused overlapping and hence duplication, as defendants contend, such itemization was not a mistake which by itself would make the total award excessive. See Guillory v. Avondale Shipyards, Inc., 448 So.2d 1281 (La.1984) and Bishop v. Shelter Ins. Co., 461 So.2d 1170 (La.App. 3rd Cir. 1984) writ denied 465 So.2d 737.
Having found no error in defendants' assigned error as to the jury instructions and interrogatories which requires our appellate review, we turn to the matter of quantum.
In wrongful death cases involving a parent, awards to minor children have traditionally been greater than awards to major children. For example, awards to minor children range from $25,000 to $225,000, with most of these awards being at $40,000 and $100,000; awards to major children range from $20,000 to $75,000 with no specific concentration.[3] The $225,000 awarded here greatly exceeds the highest prior award approved by a Louisiana appellate court for the loss of a major child's parent. Even when we take into account the trauma sustained by plaintiffs as a result of the double loss they suffered in a single disaster, we consider that the award is so disproportionately high as to be an abuse of the discretion of the jury and is clearly wrong. Under Louisiana jurisprudence, where the appellate court has found an award to be clearly erroneous, it may lower the award to the highest point which is reasonably within its discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977). However, we point out that there is no recent case for comparison with ours where the children, though adults and married with children, were living in such a close relationship with their parents. It can truly be said that these major children were not only close to their parents, but also that the family was still intact, living together as a single family unit.
Mr. Levet was 67 and Mrs. Levet was 66 years of age at the time of their deaths. Their children, Kenneth and Carol Ann, were 33 and 40 years of age, respectively. The testimony adduced at trial established that an exceptionally close relationship existed within the family throughout their lives. A videotape of photographs from the early years depicted family outings and special events. Early in their marriage Carol Ann and her husband lived with her parents until her father built them a home next door. Carol Ann spoke with her mother daily. Mrs. Levet helped Carol Ann around her home and beauty shop, and Carol Ann cut, styled and fashioned both her mother's and father's hair. Kenneth *158 likewise after marriage moved next door to his parents' home and continued to see them every day. He and his father habitually helped each other on projects around their respective homes and with yard work and gardening. Kenneth frequently sought advice and guidance from his father in dealing with the everyday problems of life. The entire family ate many meals together and socialized together. All holidays were spent together, and weekends were frequently highlighted by barbeques and seafood boils with close friends. Kenneth and Carol Ann lost not only their parents but a way of life to which they had been accustomed since childhood.
The sudden and untimely deaths of both parents had a dramatic impact on the mental state of both Kenneth and Carol Ann. Both became withdrawn and lost interest in social activities which they had previously enjoyed. Both suffered from depression and grief, Carol Ann to the point of telling her husband several times that life was no longer worth living. Close friends and family members who consoled Kenneth and Carol Ann noted an improvement over their immediate conditions but felt it would be a long time before they recovered from the grief and anguish associated with the loss of their parents.
After consideration of all of these factors and prior awards for the loss of a parent where the family was intact, we revise the judgment and reduce the awards to plaintiffs for the loss of both parents to $200,000 per child.
We next turn our attention to the exemplary damage award, which defendants contend was erroneous for the following reasons: (1) plaintiffs failed to prove Richoux was intoxicated at the time of the accident; (2) the policies of deterrence and retribution which support Civil Code article 2315.4 are not furthered by the imposition of punitive damages against a deceased driver or an employer who is merely vicariously liable for the plaintiffs' injuries; and (3) there is no factual basis to support the amount of the award as plaintiffs presented no evidence of defendant Calais' wealth and invited the jury to speculate on the range of punitive damages. In response to defendants' arguments, plaintiffs contend: (1) the unrestricted stipulation to vicarious liability and proximate cause of the accident was a judicial confession which precludes defendants from questioning their liability for exemplary damages, or, in the alternative, the evidence supports the jury's determination that Richoux was intoxicated; (2) the circumstances of the case warrant the imposition of exemplary damages against Calais; and (3) the evidence was sufficient for the trier of facts to determine the amount of exemplary damages which should be awarded.
As we view our duty in the present case, it is not to judge, as we are urged by the defendants, the philosophical pros and cons of assessing exemplary damages against one whose only liability for the injuries sustained is vicarious.[4] We find Calais' liability was justified on the basis of its own culpable behavior, which we believe contributed to this accident: Richoux's supervisor bought the alcohol for their consumption on the drive home from work. In addition, Richoux had previously requested that defendant hire independent drivers to bring employees from the job location to their homes. He had reported to his supervisor that he feared that his fatigue would cause an accident. See, Bolin, "Enter Exemplary Damages," 32 La.Bar Journal 216 (1984).
Without objection by defendants the court first instructed the jury that defendant Calais had admitted to fault and liability for the injuries. The court thereafter instructed the jury as to the standard of proof required before the jury could make an exemplary damage award. Finally, the jury was instructed as to the factors to consider on the amount of the award if *159 they found the evidence was sufficient for an award of exemplary damages.[5]
In R.J. D'Hemecourt Petroleum v. McNamara, 444 So.2d 600 (La.1983) the Supreme Court at page 601 stated the legal effect of a stipulation as follows:
"A stipulation has the effect of a judicial admission or confession, which binds all parties and the court. Placid Oil Company v. A.M. Dupont Corporation, 244 La. 1075, 156 So.2d 44 (1963). Stipulations between the parties in a specific case are binding on the trial court when not in derogation of law. Wickliffe v. Cooper and Sperrier, 161 La. 417, 108 So. 791 (1926)."
As defendants admitted to vicarious liability without distinguishing between compensatory and exemplary damages, they are now precluded from raising the issue. The only questions before us are whether the plaintiffs have proven the facts necessary for the jury to award exemplary damages and, if so, whether the award made by the jury is excessive under the circumstances of the case.
La.C.C. art. 2315.4 provides:
"In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries."
In order to prove that a person is incapable of operating a motor vehicle by reason of intoxication, it need not be shown that he was drunk, but only that he had a sufficient quantity of intoxicants to make him lose normal control of his mental and physical faculties. Jones v. Continental Casualty Co. of Chicago, Ill., 246 La. 921, 169 So.2d 50 (1964); Richard v. American Home Assurance Co., 318 So.2d 613 (La. App. 3rd Cir.1975) writ denied 322 So.2d 779; Matthews v. All American Assurance Co., 226 So.2d 181 (La.App. 3rd Cir. 1969) writ denied 228 So.2d 483.
The evidence showed Richoux was familiar with Highway 3127 and its intersection with Highway 20 in Vacherie. It was a clear day, and the intersection had a flashing red light and a stop sign for traffic traveling south on Highway 3127. Richoux was driving about 60 miles per hour immediately prior to the collision. However, he inexplicably entered into the opposite lane of traffic of La. 3127 and paid no heed to the stop sign or flashing red light as he continued through the intersection and hit the Levet vehicle broadside. The evidence also established, that the three occupants of the Calais vehicle had consumed all of one six pack of beer; that by the time of the collision at least one occupant had consumed two beers from the second six pack and Richoux had consumed "some" of the beer from the second six pack; and that the beer was consumed during the trip from Port Allen to Vacherie, approximately one hour in duration.
Based on this evidence the jury concluded that Richoux's actions of driving in the wrong lane of traffic and of disregarding the stop sign and light constituted a "wanton or reckless disregard for the rights and safety of others", and that the actions were attributable to Richoux's intoxication while operating the motor vehicle. A review of the record evidence convinces us that the jury's conclusion that Richoux was intoxicated at the time of the accident is not clearly wrong, and therefore we will not disturb it. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Likewise, we find no "clear abuse" of discretion by the jury in setting the amount of the award at $100,000 per child. Accordingly, the award of $100,000 per child in exemplary damages is affirmed.
*160 The final issue to be addressed arises out of Acceptance's request that the judgment be amended to reflect that it is liable in solido with Calais only to the extent of the policy limits, i.e., $500,000, and to cast Calais individually liable for the excess. Calais is joined by plaintiffs in opposing the request on the grounds that:
(1) Acceptance failed to expressly plead its policy limits and nonliability in solido;
(2) Acceptance failed to object in the trial court by seeking a new trial, an amendment of the judgment, a judgment notwithstanding the verdict, or a remittitur and hence waived the right to raise the issue on appeal;
(3) Under the terms of the policy Acceptance is liable for all post-trial interest on the entire judgment even should the applicable policy limits be recognized;
(4) Acceptance failed to notify Calais that it was subject to uninsured liability exposure for which it had the right to retain separate counsel, and therefore Acceptance is estopped from denying coverage for the entirety of Calais' exposure.
In a joint answer to the plaintiffs' petition counsel representing both Acceptance and Calais stated:
"Acceptance admits that it had issued one certain policy of liability insurance to Calais, but avers that said policy is a written contract, and as such is the best proof of its own terms, coverages, limitations, liabilities, warrantees and exclusions, and therefore pleads said policy as if copied in extenso."
One of the enumerated facts deemed admitted because defendants failed to respond to the request for admissions of facts was that the limit of the Acceptance policy was $500,000. Additionally, the policy itself, which reflects the $500,000 limit, was stipulated to and admitted into evidence. Thus, the contention that Acceptance failed to expressly plead its policy limits is contradicted by the record evidence and hence is meritless. Acceptance is solidarily liable with Calais but subject to the limits of the policy.[6] See Fertitta v. Allstate Insurance Co., 462 So.2d 159 (La.1985), particularly fn. 4; Addison v. Travelers Insurance Co., 281 So.2d 805 (La.App. 1st Cir. 1973), writ denied 283 So.2d 499.
Since the error is not in the verdict but rather in the judgment entered on the verdict, neither a judgment notwithstanding the verdict, nor a remittitur are proper vehicles to correct it. As the error is substantive in nature, the trial court could not amend the judgment to correct it after passage of time to apply for a new trial, and a motion for a new trial is discretionary rather than mandatory. Thus, the failure of Acceptance to raise this issue in the trial court does not preclude consideration of the issue on appeal.
The contention that Acceptance is liable for all post-judgment interest is well founded. LSA-R.S. 13:4203 provides that legal interest on all judgments "sounding in damages `ex delicto'" shall be due from date of judicial demand. The liability policy issued by Acceptance included the following clause:
"II. SUPPLEMENTARY PAYMENTS
The company will pay, in addition to the applicable limit of liability:
(a) All expenses incurred by the company, all costs taxed against the insured in any suit defended by the company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company had paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon;"
The Supreme Court has determined that such policy provisions do not insulate an insurance company from the payment of judicial interest on judgments within its policy limits. See Soprano v. State Farm Mutual Automobile Insurance Co., 246 *161 La. 524, 165 So.2d 308 (1964). And in Doty v. Central Mutual Insurance Co., 186 So.2d 328 (1st Cir.1966) writ denied 187 So.2d 451, the court, in interpreting a policy provision identical to that quoted above, held the insurer responsible for interest on the amount in excess of its policy limits only from entry of the judgment. The court found that the purpose of the provision was to protect the insured from interest expense resulting from the insurer's decision to appeal the judgment, which would effectively preclude the insured from immediately satisfying the judgment. See also Glazer v. Louisiana Trailer Sales, Inc., 313 So.2d 266 (La.App. 4th Cir. 1975) writ not considered 318 So.2d 47. Accordingly, we hold that Acceptance is responsible for all post-judgment interest on the entire judgment.
We decline to address the issue raised as concerns any breach of duties owed by Acceptance to Calais as arguments on the issue are based on facts which the parties readily admit are outside the record. These issues are properly raised in separate proceedings between the insurer and the insured.
Finally, we note that both the judgment and the verdict reflect an award for funeral expenses in the amount of $9,187.66; whereas, it was admitted that the expense was $9,182.66. Accordingly, we revise the judgment to reflect the proper sum.
In conclusion and recapitulation we revise the judgment to provide that: (1) the joint and in solido liability of the defendants Calais & Sons, Inc. and Acceptance Insurance Company is subject to the limits of coverage contained in the policy with post-judgment interest on the entire judgment to be paid by Acceptance Insurance Company; (2) the award for funeral expenses is revised to $9,182.66 as per the admissions of the parties; and (3) the compensatory damage awards in favor of plaintiffs for the death of both parents is reduced to $200,000 per child and, as thus revised, the judgment is affirmed. All costs are to be borne by the defendants.
REVISED AND, AS REVISED, AFFIRMED.
KLIEBERT, J., concurring in part and dissenting in part.
BOWES, J., concurs in part and dissents in part and assigns written reasons.
GAUDIN, J., affirming in part and dissenting in part.
KLIEBERT, Judge, concurring in part and dissenting in part.
I agree with the majority opinion insofar as it relates to the punitive or exemplary damages, but disagree with the decision to reduce the compensatory damage award to each child from $225,000.00 to $100,000.00 per parent on the grounds that the jury award greatly exceeds the previous highest award (said by the majority to be $100,000.00) affirmed by Louisiana appellate courts to a major child for the death of a parent.
In justifying the reduction while summarily dismissing as inapposite affirmed cases where up to $300,000.00 was awarded to minor children and $150,000.00 to major children for the loss of love, affection and companionship of a single parent, the majority notes that "awards to minor children have traditionally been greater than awards to major children." Further, the majority suggests that the age of a child is the foremost consideration when computing an award for the loss of love, affection and companionship of a parent.
In my opinion, age is only important when the amount of the award is intended to encompass loss of support as an element of damages. This is not the situation here. It is the relationship which existed between the decedent(s) and the plaintiff(s) which must be given the utmost consideration if an award is to accurately reflect the loss of love, affection and companionship. Adherence to the rule stated by the majority would result in a 17 year old being entitled to a greater award for the loss of love and affection of a parent because he is a minor, than would an 18 year old because he is a major.
*162 The disparity between awards to minor and major children undoubtedly signifies recognition by juries (and the judiciary) that as children mature, marry and move away to embark on lives of their own, they begin an almost imperceptible drift away from the shelter and guidance of their parents and in fact become self-protective of their individualism. As is apparent from the facts set forth in the majority opinion, such was not the situation in the present case. Here each child resided next to their parents' home and interacted daily with them. Indeed, these major children were not only close to their parents, but also, the family was still intact and living their daily lives together as though they were still a single family unit with each member of the family interdependent on the other. Thus, the relationship of the major children and their parents in this instance was more akin to the relationship which generally exists between a child of tender years and his parents or between spouses who have lived virtually all of their adult lives together.
Confronted with compelling evidence as to the relationship which existed between the plaintiffs and their parents, the jury reasoned that $225,000.00 was a just award for the loss of love, affection and companionship of each parent. La.C.C. art. 2324.1 provides that in the assessment of damages in cases of offenses, quasi offenses and quasi contracts, much discretion must be left to the judge or jury. In discussing the forerunner to Article 2324.1[1] in Coco v. Winston Industries, Inc., 341 So.2d 332, 335-336 (La.1977) the supreme court stated:
"[5, 6] We do reemphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award. Anderson v. Welding Testing Laboratory, Inc., [304 So.2d 351 (La. 1974)] supra; Bitoun v. Landry, [302 So.2d 278 (La.1974) ] supra; Fox v. State Farm Mutual Automobile Ins. Co., [288 So.2d 42 (La.1973)] supra; Walker v. Champion, [288 So.2d 44 (La. 1973)] supra. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. Bitoun v. Landry, supra; Spillers v. Montgomery Ward & Company, Inc., [294 So.2d 803 (La. 1974)] supra. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence.

Further, we believe that, heretofore, courts of appeal have placed too much emphasis on their review of other reported decisions. Certainly no two cases are ever fully alike. And whether two cases are so similar as to produce like quantum judgments is hardly discernible by gleaning the facts of the comparable decision from simply a written opinion of an appellate tribunal. Of course, another factor bearing on this matter is that significant change has been, and is taking place in our society not the least of which are changes in economic conditions (particularly rampant inflation), fluctuating job categories, employment opportunities, and even lifestyles. Furthermore, it is impossible for an appellate court to judge what evidence in a particular case was given special weight by the finder of fact." (Emphasis Supplied)
Despite this clear and concise statement as to the standard of review this court, as an intermediate appellate court, is duty bound to follow, the majority, based solely on its observation that awards to minor children have traditionally exceeded awards to major children for the death of a parent and an unsupported finding that "awards to major children range from $20,000.00 to $75,000.00 with no specific concentration," decided the jury abused its discretion and proceeded to set the award at $100,000.00, *163 a figure they bargained over and considered to be a more appropriate award than the one set by the jury.
Moreover, we note the awards made for the wrongful death of several members of one family in Caldarera v. Eastern Airlines, Inc., 705 F.2d 778 (5th Cir.1983). There the jury awarded to Peter Caldarera for the death of his 63 year old mother, his 33 year old wife and his 8 year old son and other special damages the sum of $937,500.00, and in favor of Christopher Caldarera, an 8 year old minor, for the death of his mother, the sum of $937,500.00. Although the trial judge had set the damages at $737,500.00 he refused to grant a remittitur on the jury award.[2] While reviewing the quantum set by the trial judge and the one set by the jury, Judge Rubin, as the organ of an appellate panel, determined a maximum jury award to Peter Caldarera, under Louisiana law, would be as follows: (1) for the loss of love and affection of his mother $150,000.00, (b) for loss of love and affection of an 8 year old minor son $225,000.00, and (c) for loss of love and affection of his wife $250,000.00.
At page 784 in the Caldarera case Judge Rubin set out the extent of distortion necessary to justify intervention in the federal appellate system as follows:
"We have expressed the extent of distortion that warrants intervention by requiring such awards to be so large as to `shock the judicial conscience,' `so gross or inordinately large as to be contrary to right reason,' so exaggerated as to indicate `bias, passion, prejudice, corruption, or other improper motive,' or as `clearly exceed[ing] that amount that any reasonable man could feel the claimant is entitled to.' Nonetheless, when a jury's award exceeds the bounds of any reasonable recovery, we must suggest a remittitur ourselves or direct the district court to do so. Our power to grant a remittitur is the same as that of the district court. We determine the size of the remittitur in accordance with this circuit's `maximum recovery rule,' which prescribes that the verdict must be reduced to the maximum amount the jury could properly have awarded." (Footnotes Omitted)
Utilizing the standard above stated, the federal appellate court refused to intervene in the award set by the trial judge for Peter Caldarera but did grant a remittitur on the jury award to make it equal to the trial judge's award. Also, applying the same standard, the court intervened in the award to the 8 year old minor for the loss of love and affection of his mother and reduced the award to $300,000.00. I see no difference in the standard of review we in the state court system are required to follow from that set out by Judge Rubin as the applicable standard for review in the federal system. Although the award in the federal case is not binding on this court, it involved awards to Louisiana citizens injured in a Louisiana accident, set by Louisiana jurors, a district court judge who was a citizen of Louisiana, and a panel of federal judges, of which at least one judge was a Louisiana citizen, and therefore in my view is very persuasive authority. Additionally, I note Hellmers v. Department of Transportation and Development, 503 So.2d 174 (4th Cir.1987) writ denied 505 So.2d 1149 (1987) where our brethren in the Fourth Circuit awarded $225,000.00 to each of three minor children for the loss of love and affection of their mother.
The jury here set the amount it considered to be fair compensation for the plaintiffs' loss of love and affection of their parents. The amount set is not so excessive or distorted as to shock the judicial conscience or so exaggerated as to indicate bias, passion, prejudice, corruption, or other improper motives. Therefore, in my view, the court should not disturb the jury award.
For the reasons stated therefore, I respectfully dissent from that portion of the majority opinion reducing the jury's compensatory *164 award to the children for the loss of love and affection of their parents.
GAUDIN, Judge, affirming in part and dissenting in part.
I unhesitatingly affirm the finding that the Levets were a close family unit and that Kenneth Levet and Carol Ann Levet Lassere should be fairly compensated for the extremely sad and unfortunate loss of their parents. However, I also agree with this Court's reduction of the $450,000.00 compensatory damage jury awards to $100,000.00 per surviving child per deceased parent.
A further reduction should probably have been made in the light of prevailing jurisprudence and a consideration of the fact that there was no financial dependence. The children, aged 40 and 33, respectively, were self-supporting, as were their parents. The previous high, according to our primary opinion, was $75,000.00 awarded to a major for loss of one parent.
Higher awards have been made to very young and dependent children, as in Hellmers v. Dept. of Transp. & Development, 503 So.2d 174 (La.App. 4th Cir.1987), which involved the traffic accident death of a 30-year-old mother, but not to a surviving major child with no monetary dependence on the lost parent or parents.
In the instant Levet case, exemplary damages of $200,000.00 were also awarded by the jury in accord with LSA-C.C. art. 2315.4 and affirmed by a majority of this panel. In affirming this award, these conclusions were necessarily made: (1) Either Darryl Richoux was statutorily (according to Art. 2315.4) intoxicated when the accident occurred or it was jointly and effectively stipulated that he was, (2) Art. 2315.4 damages can be awarded against an employer only vicariously liable for the employee's actions, and (3) the amount awarded was just and proper. I firmly disagree with the third conclusion, find considerable fault with the second and agree with the first partially because the jury's fact-finding authority is broad and subject to change only in instances of manifest error.
Art. 2315.4 was enacted in the wake of numerous, perhaps countless, accidents caused by drinking drivers. Although the article uses the term "exemplary damages," such usage seems to be synonymous with punitive damages. The legislature meant to punish drinking and injury-causing drivers and, of course, to warn others.
Here, however, Richoux can't be punished or deterred as he died as a result of the collision. Also, the victims, i.e., the surviving children, have been recompensed as fully as the law allows without an additional exemplary award.
This record does not show any actionable negligence on the part of Calais & Sons, Inc., Richoux's employer. Calais' hiring practices were not questioned nor was it seriously urged that Richoux's extended working hours rendered him unfit to serve as a driver for other company employees.
The accident happened, according to the petition and according to the jury finding, because of Richoux's statutory intoxication and his wanton and reckless disregard for the safety of other motorists.
In Northwestern National Casualty Company v. McNulty, 307 F.2d 432 (1962), the federal Fifth Circuit held in a case from Florida that state law and public policy prohibited insurance against liability for punitive damages, reasoning that a person should not be allowed to protect or insulate himself from the consequences of intentional wrongdoing injuries to others. The guilty party should pay, not an insurance company. The court said:
"In granting judgment against the insurance company for punitive damages, the (trial) court based its decision not on the insurance contract but on ... the doctrine of respondent superior ...
"The policy considerations in a state where ... punitive damages are awarded for punishment and deterrence would seem to require that the damages rest... on the party actually responsible for the wrong. If that person were permitted to shift the burden to an insurance company, punitive damages would serve no useful purpose. Such damages do not compensate the plaintiff, since compensatory *165 damages already have made the plaintiff whole. And there is no point in punishing the insurance company; it has done no wrong. In actual fact, of course, and considering the extent to which the public is insured, the burden would ultimately come to rest not on the insurance companies but on the public, since the added liability ... would be passed along to the premium payers. Society would then be punishing itself for the wrong committed by the insured."
I do not suggest that Northwestern National be blindly followed. The facts are not precisely the same and public policy has not been raised as an issue in the current case. The federal opinion, nonetheless, is worthy of notice.
In any event, I do not believe that the Louisiana legislature intended by and through Art. 2315.4 to allow a gargantuan $200,000.00 exemplary damage award against an innocent employer only vicariously responsible for an employee's negligence.
BOWES, Judge, concurring in part and dissenting in part.
I concur with my esteemed brothers in their conclusions reached in the majority opinion insofar as that opinion revises the judgment of the district court to provide that:
1) The joint and in solido liability of the defendants Callais & Sons, Inc. and Acceptance Insurance Company is subject to the limits of coverage contained in the policy with post-judgment interest on the entire judgment to be paid by Acceptance Insurance Company;
2) the award for funeral expenses is revised to $9,182.66 as per the admissions of the parties; and
3) the compensatory damage awards in favor of plaintiffs for plaintiffs for the death of both parents is reduced to $200,000 per child and, as thus revised, the judgment is affirmed.
With this third finding, I agree reluctantly as the award is considerably higher than any previous award for major children for deaths of elderly parents on whom the children were not financially dependent in any way; and I do so only because I feel this was a very close-knit family with extraordinarily-close and loving relationships and because I would award no exemplary damages.
I dissent from their declaration that all costs are to be borne by defendants and, for the reasons given hereinafter, I would divide all costs equally between the plaintiffs' side and the defendants' side.
More importantly, I vigorously and philosophically dissent from the views expressed by the majority which indicate to me that they accept the contention of plaintiffs that the defendants stipulated to (or "admitted", as they say) that they were liable for the exemplary damages provided by LSA C.C. art. 2315.4.[1] The opinion states that since the defendants "admitted" to vicarious liability without distinguishing between compensatory and exemplary damages, they are now "precluded" from raising the issue. I further strongly disagree that sufficient proof was offered by plaintiffs to show that the driver, Darryl Richoux, was intoxicated to any degree whatsoever, or that the deaths of the Levets were caused by acts of Richoux constituting "wanton or reckless disregard for the rights and safety of others." There is no doubt that Richoux's "negligence", in the usual sense that the word is used in civil proceedings, caused the accident. However, I am of the firm opinion that plaintiffs are not entitled to exemplary damages under the facts of this case.
I wish to emphasize, clearly and emphatically, at the very outset of this dissent, that I am personally strongly in favor of punitive laws such as LSA C.C. 2315.4 involved *166 here, which seek to penalize and deter drunken driving and wanton and reckless acts. There is, indeed, too much death and carnage on our highways attributable to the use of alcohol or drugs while driving. My argument with my learned colleagues in this case is not the theory and purposes behind Art. 2315.4, but its application, apparently for the first time, under the circumstances of this case, in which I consider the evidence necessary to implement the act to be sorely lacking. To establish a first case precedent without the proper evidence would be folly and a disservice to the legal profession in my opinion.
As astute appeal counsel for defendants so ably pointed out in their supplemental brief, it is difficult to imagine a set of circumstances under which a party would admit or stipulate to its "wanton or reckless disregard for the rights and safety of others." LSA C.C. Art. 2315.4. In my view, plaintiffs' suggestion that such a stipulation or admission was entered into in a state which has heretofore forbidden the award of punitive damages and which has not yet interpreted its new statute now authorizing punitive damages, where the only direct evidence of Darryl Richoux imbibing in any alcohol at all, was deposition testimony that he drank "some beer", and where no blood-alcohol, breath or field sobriety test was introduced into evidence, strains credulity and the legal intellect.
As I see the situation, Callais & Sons, Inc. (Callais) and Acceptance Insurance Company (Acceptance) stipulated or admitted only that Darryl Richoux was negligent and that his negligence was a proximate cause of the accident. In long established and well understood legal parlance, Callais "admitted liability." Very simply, that is all they did. There is no language in the stipulation which suggests that Callais intended to stipulate, admit, or agree, that punitive damages were due (the word "punitive" or "exemplary" is not even used). In addition, the course of the trial manifests the clear understanding of both court and counsel that any liability for punitive damages would have to be proven by a preponderance of the evidence.
In this regard, the majority opinion contains these statements:
As defendants admitted to vicarious liability without distinguishing between compensatory and exemplary damages, they are now precluded from raising the issue. The only questions before us are whether the plaintiffs have proven the facts necessary for the jury to award exemplary damages, and if so, whether the award made by the jury is excessive under the circumstances of the case. [emphasis supplied]
In my view, these statements are contradictory. If "necessary facts" must be proven in order for the jury to award exemplary damages, then surely no agreement or stipulation was reached between the parties that such damages were due and admitted to by defendants. This leads me to the inescapable conclusion that the position taken by the majority is inherently incorrect.
Appellees' argument that trial counsel (a completely different law firm from appellate counsel) for Callais admitted to vicarious liability without distinguishing between compensatory and exemplary or punitive damages is apparently based solely on the following exchange between counsel and the court:
Mr. McKernan: It is my understanding, your Honor, that the defendants have stipulated to liability in this case, and fault, as the defendant, Callais & Sons, Inc., and that the sole and approximate cause [sic] the accident was caused through the negligence of Darryl Richoux and also as to Callais & Sons, Inc.
Judge Meyer: Is that your understanding of the stipulation, Mr. Rossi?
Mr. Grossel-Rossi: Your Honor, we talked about it
Mr. McKernan: We talked about it last night.
Judge Meyer: We talked about it last night and
Mr. Grossel-Rossi: If we allowed them to agree to this, all I'm saying is we simply would have to go back to the jury *167 charges against Callais & Sons. We don't need for them to testify here.
Judge Meyer: That's the stipulation, admitting liability as to Callais & Sons, and also that the approximate cause of the accident was the negligence of the driver.
Mr. Grossel-Rossi: Yes sir. Will you stipulate to that?
Mr. McKernan: As to Acceptance Insurance Company's policy is a policy of $500,000.00 limits, single coverage? Yes. Yes, I'll stipulate to that. I'm going to introduce it into evidence, anyway,
Mr. Grossel-Rossi: I thought you would. We just wanted to make sure.
Mr. McKernan: Becauseyes, I'll stipulate to that. Yes.
Mr. Grossel-Rossi: I didn't want to
Judge Meyer: Let's show he stipulates to that fact.
Mr. McKernan: And we alsoit was part of the admissions, also; it's stipulated that the policy was in full force and effect at the time of the accident; is that correct?
Judge Meyer: That's also stipulated to?
Mr. Grossel-Rossi: Yes.
Contrary to appellees' suggestion, and in my opinion, the quoted exchange in no way "clearly reflects" that Callais stipulated to liability for punitive damages. There is certainly no reference to punitive damages in the stipulation. In fact, a careful reading of the exchange makes it doubtful as to whether anything was actually stipulated to except that the policy coverage was $500,000.00. The response of plaintiffs' counsel is not only unclear, but appears to me to be unresponsive to the remarks of both the court and opposing counsel. Consequently, I find this vague, incomplete, unresponsive, rambling of words far too ambiguous for me to agree with the broad and explicit construction placed upon it by the majority.
In my interpretation of these words, Callais did not admit that it acted with "reckless and wanton disregard for the rights and safety of others," and Callais did not admit that Mr. Richoux was intoxicated.
Callais possibly stipulated to the elements of a cause of action for negligence, while requiring the Levets to prove the elements of and the extent of the damagesand possibly they only stipulated that there was a policy limit in full force and effect of $500,000 (C.F. supra). When counsel "admit liability", as that phrase is normally used and understood in the courtroom, they do not stipulate that damages are due, but only that an accident occurred for which defendant admits ordinary responsibility. Plaintiffs then must prove that damages were sustained, and the nature and extent of those damages.
In this case, the language of the stipulation clearly evidences the trial judge's understanding that punitive damages were not contemplated by the stipulation, for his statement that the "[ap]proximate cause of the accident was the negligence of the driver" would have been unnecessary if the stipulation was anything more than a stipulation to Richoux's ordinary negligence. In addition, the conduct of counsel for appellees at trial evidenced his clear understanding that the elements of damages had to be proved to the jury by a preponderance of the evidence.
Finally, after the stipulation had been entered into, the court provided the jury with interrogatories asking whether Darryl Richoux was intoxicated, and charged the jury on the burden of proof required in order to assess punitive damages. The Court's charges to the jury and the plaintiffs' evidence and argument make crystal clear their understanding that the requirements of Article 2315.4 had to be established by regular proof.
There is sparse jurisprudence concerning stipulations, but a few general rules have emerged. For instance, in considering whether counsel had stipulated to a plaintiff's "seaman" status, the Court in Rice v. Glad Hands, Inc., 750 F.2d 434 (5 Cir. 1985), made the following observations:
Like contracts, stipulations must be interpreted in light of the circumstances under which they are made. Chouest v. A & P Boat Rentals, Inc., 472 F.2d 1026 (5 Cir.1973).... A stipulation binds parties *168 only to the terms actually agreed upon. Branding Iron Club v. Riggs, 207 F.2d 720 (10th Cir.1953). 750 F.2d at 438.
When a stipulation is ambiguous, the courts have attempted to discern the intent of the parties and apply the most reasonable interpretation. Corsey v. State of Louisiana, Through the Department of Corrections, 366 So.2d 964 (La.App. 1 Cir. 1978); reversed on other grounds, 375 So.2d 1319 (La.1979); Chouest v. A & P Boat Rentals, Inc., supra.
I submit that a careful reading of this so-called stipulation indicates that the most reasonable interpretation of the intent of the parties is one of two things. At best (for plaintiffs), it is an admission of ordinary liability by defendants; or it is only a stipulation between the parties that there was in full force and effect at the time of the accident a policy of insurance in the amount of $500,000. Another very important and logical reason which militates strongly against the position taken by the majority is that Callais would have derived no benefit whatsoever from a stipulation, or "admission" (as the majority calls it), to liability for punitive damages. The stipulation makes no reference to punitive damages or the prerequisites to a punitive damage claim. Throughout the trial, as page after page of the transcript shows, appellees' were seriously concerned with establishing that Darryl Richoux was intoxicated, a concern which can only be explained in one wayat the time of the trial, it was understood by counsel and the court that punitive damages had to be proven by a preponderance of the evidence. In my opinion, there is absolutely no support in the record for appellees' argument that Callais took the inexplicable step of stipulating or admitting, under a new, untested and uninterpreted statute, that Darryl Richoux was intoxicated and that Richoux or Callais acted with "wanton or reckless disregard."
It is my belief that appellees fully understood that it was their burden to prove that Darryl Richoux was intoxicated in order to recover punitive damages. Appellees' ingenious, but faulty, conclusion, that by stipulating to liability for the accident, Callais implicitly admitted that Mr. Richoux was intoxicated and that Richoux acted with "reckless and wanton disregard" is not supported by their own counsel's conduct at trial. In his opening argument to the jury, appellees' counsel stated:
Defendants have admitted fault. They have admitted the act caused damage. They have not admitted to any amount of damage, but the cause of damage, through the fault of Darryl Richoux through his negligence or his lack of due care.... In order for Carol Ann and Kenneth to recover exemplary damages, in addition to compensatory damages, they must PROVE these aspects of the caseand I promise you now that if we have not PROVEN them at the conclusion of this case, I will not ask for exemplary damages; I give you my word. (R. 228, 232-233). [emphasis supplied]
Appellees again evidenced their understanding that their right to punitive damages had to be proven by a preponderance of the evidence in closing argument:
Louisiana adopted it [La.Civ.Code Article 2315.4] last June. You now have, I believe, an opportunity to be pioneers in this regard. If you believe in the law as it was written and if you believe that we have established by a preponderance of the evidence as I have or else I would not be asking you for it at this time, that, at the time of this accident, Mr. Darryl [Richoux] was under the influence of alcohol and that was a cause, in fact, of his running the red light and the stop sign not the only cause; remember this, not the only cause, but a cause.... (R. 416) [emphasis added]
In addition to counsel's argument to the jury, appellees' trial strategy evidenced that they did not believe that liability for punitive damages had been stipulated. After the stipulation had been entered into, appellees presented testimony on the question of whether Darryl Richoux was intoxicated from several witnesses. In this connection, it is very noteworthy that the only two witnesses who investigated the scene *169 of the accident immediately thereafter, Dr. Waguespack, the assistant coroner, and Trooper Lopez, did not testify, nor indicate in any way, that Richoux appeared intoxicated or to have been drinking. If they had had the slightest doubt regarding his consumption of alcohol, after such a terrible accident, why did they not perform a blood alcohol test; or, if they did, why was it not produced in evidence? (unless it was negative?)
This brings us to the heart of the evidence questionwhether or not there was sufficient evidence placed before the jury by the plaintiffs so that a rational trier of fact could find, by a preponderance of the evidence, that Richoux was intoxicated and that this intoxication caused him to commit "wanton and reckless acts" which were a cause in fact of the resulting injuries. (Art. 2315.4 supra).
Absolutely the only testimony in the record presented to the jury, that I could find, or that was pointed out by either side, regarding how much beer Richoux actually drank (except, in my opinion, for the ridiculous, unfounded, assumptions (without proven factual basis) made in the hypothetical questions posed by counsel for plaintiffs' to his supposedly "expert" witnesses, which are discussed later) is contained in two questions and answers asked by plaintiffs' counsel of Mr. Kelly St. Amant. He was the only one of the other two occupants of the car to give testimony (and that was by portions of his deposition offered by plaintiffs' counsel). The questions are as follows:
Q. Do you know how much beer Richoux consumed?
A. I can't be sure.

Q. But he did drink "some"?
A. Yes, he drank "some". [emphasis supplied]
Actually, the witness' first answer means "I don't know." On further prompting, he said "some". Obviously, "some" can be any amount. It could just as easily have been one or two sips or one or two cans. In fact, with the stringent drunken driving laws now in effect in this state, which are common knowledge to all, it is more logical, in my opinion, to believe that, as it concerns Richoux, "some" meant very little since he was driving.
There was other testimony that during the trip from Port Allen "some occupants" of the car drank all of one six pack of beer and part of a second one. However, according to my logic, it is patently false and pure speculation, without a shred of proof or correctness behind it, to "assume" from this pitifully-meager evidence that the driver, Richoux, drank "his share" or thirty-six ounces of beer during the trip. This certainly is not "proof" of any kind. Yet, this is the assumption and the quantity of beer allegedly consumed by Richoux that plaintiffs' counsel gave to his allegedly "expert" witnesses when asking them if, in their opinion, this much alcohol consumed in one hour's time could have influenced Richoux's driving. Asked to assume this, any reasonable person, expert or not, would have to answer "yes". But, obviously, if the assumptions given are not correct, then the answers given are worthlessand so they are.
In my opinion, by no stretch of the wildest imagination can it logically be said that these speculative assumptions and answers, without factual foundation, constitute proof by a preponderance of the evidence that Richoux drank any excessive amount of beer at any time, or that he was intoxicated or that his driving was thereby affected.
The only other evidence from which a jury could possibly have concluded that Richoux was intoxicated was some testimony that he apparently inexplicably entered the wrong lane of travel for a short time (distance apparently undetermined) before the accident, that he ran a flashing red light, and was traveling about sixty miles per hour.
In regard to this evidence, there was much testimony establishing the fact that Richoux worked the night shift and had gotten off work, without sleeping since midnight, just before beginning the fatal trip, so he was undoubtedly fatigued. In fact, the testimony revealed that Richoux had previously asked the company to provide *170 other independent drivers because he had almost fallen asleep once before under similar conditions and was afraid to drive home again after not sleeping all night, but the company had never responded to his request. This may show extreme fatigue on the part of Richoux and negligence on the part of Callaisbut it does not show, much less prove, intoxication or drinking on Richoux's part.
In my book of logic, it is indeed more likely than not, under these circumstances, that such fatigue could easily have been responsible for inattentiveness which caused Richoux to enter the opposite lane of traffic momentarily, and ignore a flashing red light in a vicinity with which he was familiar. It is entirely plausible to believe that Richoux could have fallen asleep at the time as it is common knowledge that sleep is difficult to fight off when one has driven a long distance in a fatigued condition.
The same factors could have caused Richoux to go "about" sixty miles per hour (in presumably a fifty-five mile zone). But I am of the opinion that the jurisprudence has long established that even if there was this slight excess over the speed limiton a country roadthat, in itself, was not a cause in fact or a contributing factor to the accident, does not constitute negligence, and should be given no real importance in this case. In fact, going sixty in a fifty-five mile zone on a country road won't even get one a suspicious look from troopers in a passing police car.
But whether the fatigue of Richoux caused the accident or not (and this writer is highly suspicious that it did), these actions of Richoux could not, in my judgment, possibly be sufficient evidence for a jury to reach the conclusion that Richoux was intoxicated or that such intoxication caused him to commit "wanton and reckless acts contributing to the injury." Red lights are run every day by people who have not had a drop of alcoholand they are cited for such violations. Simple "inattentiveness" for just a fraction of a second could have caused Richoux's actions and this happens every day to drivers who have not imbibed alcohol at all. However, common sense tells us these actions are not necessarily indicative of the use of alcohol.
This does not mean that Richoux's actions were justified. No matter what the cause, his behavior was responsible for the deaths of two lovable, innocent, people and for immeasurable suffering for the survivorsand I agree that the defendants must be made to pay adequate compensatory damages. However, this view of the events does mean to me that we should not invoke Art. 2315.4 for the very first time, perhaps, and set a landmark precedent for the maximum amount of $100,000 extra damages on the basis of such flimsy, willo'-the-wisp evidence of alleged intoxication.
It is axiomatic that statutes such as this one are penal in nature and therefore must be strictly construed and interpreted. See, e.g., Posey v. Board of Trustees, State Group Benefits Program, 426 So.2d 705 (La.App. 1 Cir.1982). It follows, in my view, that the burden of proof, and a strict one at that, is upon the plaintiffsand it was incumbent on them to use every means at their disposal to produce proof of intoxication. In my opinion, not only did plaintiffs fail completely to prove their case with what testimony they presented (despite the inexplicable lack of any type of objections by defendants' trial counsel to faulty factual assumptions for hypothetical question on the amount of alcohol actually consumed by Richoux), but they also failed to produce additional evidence apparently available to them, which might have enlightened the jury and this Court.
The most glaring omission of plaintiffs' case, as seen by this writer, is the fact that they failed to give any explanation at all to why they did not subpoena, or seek to produce, or even take the deposition of Jimmy Lafont, the defendant's supervisor and only other occupant of the car besides Richoux and St. Amant. Surely, he very probably could have told the jury how much beer Richoux consumed. Why was he not brought forth?
In addition, there does not appear from the record that an adequate or strenuous effort was made to produce Kelly St. Amant *171 in person at trial. The record does not seem to indicate whether plaintiffs issued a trial subpoena to him or whether they obtained service on him for appearance at trial. Instead, plaintiffs introduced into evidence only "portions" of his previous deposition designated by plaintiffs' counsel. Neither the jury, nor we, have had the benefit of all he had to sayof his full depositionwhich, for another inexplicable reason, was not objected to at trial by defendants' trial counsel.
In my opinion, under what is commonly known as the "cross examination statute", LSA art. 1634, C.C.P., plaintiffs could have required both Lafont and St. Amant (certainly Lafont as defendant's supervisor) to testify under cross examination without vouching for their credibility, so they had nothing to lose by expending every effort to get them into court. Why did they not do so?
Plaintiffs' counsel, in their brief or in oral argument, casually dismissed the failure to produce these witnesses by saying that "they were either reluctant to attend or did not wish to testify." This weak and meaningless explanation is not legally sufficient. Plaintiffs unquestionably have the burden of proof and it is well settled that where a litigant fails to produce evidence or witnesses available to him and no reasonable explanation is made therefor, the presumption arises that the production of such evidence or witnesses would have been unfavorable to his cause. See Cox v. Cadaro, 484 So.2d 177 (La.App. 5 Cir.1986) and authorities quoted therein. I believe this presumption should be applied against the plaintiffs in the present case so we must assume that one or both of these witnesses would have testified that Richoux was not intoxicated, or had very little to drinkat least so little that his driving was not affected. They might even have told us whether or not Richoux fell asleep at the wheel.
To summarize, in my opinion, plaintiffs have failed completely to carry their burden of proof and have produced no proof whatsoever that Richoux was intoxicated and committed wanton and reckless acts.
Consequently, I do not believe that there was sufficient evidence placed before the jury by the plaintiffs in order for a rational trier of fact to conclude, by a preponderance of the evidence, that plaintiffs had produced "proof that the injuries upon which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries." Art. 2315.4 supra. cause in fact of the resulting "injuries." (Art. 2315.4, supra).
For all the reasons expressed above, I would not invoke the penalties provided by Article 2315.4 under the circumstances of this case, and would not award exemplary damages. Accordingly, I would set aside and annul the jury award in this respect and divide the costs of the appeal equally; and to this extent, I respectfully dissent from the views expressed in the majority opinion.
NOTES
[1] The award to Carol Levet Lassere is stated in the judgment to be $255,000. This is an apparent typing error.
[2] See La.C.C.P. arts. 1467 and 1468; Larkin v. First Georgia Underwriters, 466 So.2d 655 (La. App. 5th Cir. 1985).
[3] See, Hellmers v. Dept. of Transp. & Development, 503 So.2d 174 (La.App. 4 Cir.1987); Thomas v. State Farm Ins. Co., 499 So.2d 562 (La.App. 2 Cir. 1986), and cases cited therein; McQuarters v. Zegar, 466 So.2d 579 (La.App. 5 Cir.1985).
[4] The defendants stipulated to liability for all damages proven by plaintiffs (plaintiffs' petition requested and itemized compensatory and exemplary damages) without distinction between exemplary and compensatory damages.
[5] In his charge to the jury the trial judge: (1) read Civil Code article 2315.4; (2) informed the jury that the purpose of exemplary damages is to punish the wrongdoer and deter the kind of conduct involved; and (3) informed the jury that the factors to be considered in setting the amount of the award were the nature and extent of harm to the plaintiff, the wealth or financial situation of the defendant, and the extent to which the defendant's conduct offends a sense of justice and propriety.
[6] We specifically do not address the issue whether Acceptance should be held liable in solido for that portion of plaintiffs' recovery against defendant Calais attributable to punitive damages, since Acceptance did not raise this issue in the trial court or on appeal. Compare, Northwestern National Casualty Co. v. McNulty, 307 F.2d 432 (1962).
[1] See former C.C. art. 1934(3) (1870).
[2] The trial was bifurcated with the judge trying the case against United States and the jury trying the case against other defendants.
[1] LSA C.C. Art. 2315.4

Art. 2315.4. Additional damages; Intoxicated defendant
In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries.
Added by Acts 1984, No. 511, § 1.